# Richmond.

## Reliance Life Insurance Co. v. Gulley's Administratrix.

November 16, 1922.

1. INSURANCE—*When Policy Becomes Effective—Delivery—Acceptance— Payment of Premium—Instructions—Delivery and Acceptance for Jury—Case at Bar.*—In an action upon an insurance policy the defense was that the policy was never accepted by the insured, nor the first premium paid by him. The court instructed the jury that the law presumes from the fact that the policy in question was received by the insured and filed by him in his desk among his papers, and there retained by him until his death; that he had accepted the same subject to all of its terms and conditions. There was testimony that the policy was sent to the insured on approval, along with a note to be signed by him for the first premium; that the note had been sent to the insurance agent unsigned; had been returned by him to insured for signature and that insured had left home about the time he received the note, without signing it, and had not returned before his death. There was no evidence that the policy was to be treated as delivered unless insured gave the note for the first premium.

   *Held:* That the instruction was bad as taking away from the jury the consideration and determination of the very fact in issue. The circumstances under which the policy was sent to the insured, and the subsequent acts and dealings of the parties, should have been submitted to the jury for them to decide whether there had been such a delivery and acceptance of the policy as bound the company.

2. WITNESSES—*Credibility for Jury—Testimony of Insurance Agent—Case at Bar.*—In the instant case an action on an insurance policy, where the defense was that the insured had never accepted the policy nor paid the first premium, the testimony of the insurance agent who negotiated with the insured had a very important bearing on the liability of the company, and should have been submitted to the jury. The credibility of the agent was a question for the jury.

3. INSURANCE—*Acceptance of Policy—Retention of Policy—Instructions— Declarations of Insured.*—In an action on an insurance policy where the defense was that the insured had never accepted the policy nor paid the first premium, the court instructed the jury that the acceptance by an insured of a policy of insurance, when the same has been

submitted to him in complete form by the insurer, might be inferred from his conduct in retaining it or from any act or declaration on his part manifesting his purpose to accept it.

*Held:* That this instruction was objectionable because of want of evidence of any act on the part of the insured from which his acceptance of the policy could have been inferred, and because the company could not be adversely affected by any uncommunicated "declarations" on the part of the insured.

4. INSURANCE—*Instructions—Acceptance and Delivery of Policy—Ignoring Evidence—Policy Found Among Effects of Deceased—Case at Bar.*— The law presumes, in the absence of evidence to the contrary, that a policy found among the effects of deceased was delivered to him by the insurance company as a valid and subsisting contract without any condition of any sort attached to it. But in the instant case an instruction that if the policy in question was found among the effects of deceased there was a presumption that it was delivered by defendant company as a valid and subsisting contract, without any condition attached to it, was erroneous, because it ignored all of the defendant's evidence tending to show that the policy was not to be effectual unless and until the insured paid the premium or gave his note for it.

5. INSURANCE—*Payment of Premium—When Policy Becomes Effective.*— Where a policy of insurance expressly provides that the contract of insurance should not take effect until the first premium should have been actually paid, and further provides that agents were not authorized to modify the policy or extend the time for paying a premium, there can be no recovery on the policy unless the premium was prepaid, or compliance with the provision thereof was waived.

6. INSURANCE—*Payment of Premium—When Policy Becomes Effective—Recital of Receipt of Premium.*—Where a policy acknowledges receipt of the premium and recites that it was issued in consideration of that premium, the law presumes that as between the company and the deceased, the premium was considered as fully paid, where there has been an unconditional delivery of the policy; but not where the delivery of the policy and the payment of the premium or giving a note therefor are to be coincident. The presumption is not a conclusive one, but is open to explanation.

7. INSURANCE—*Acknowledgment of Receipt of Premium—Estoppel of Insurer—Conditional Delivery—Parol Evidence.*—In an action upon an insurance policy found among the effects of deceased it was insisted that the insurance company was estopped from denying that the first premium had been paid because deceased had possession of the policy at the time of his death, and the policy acknowledged the receipt of the first premium.

*Held:* That while such is the law in case of an unconditional delivery of the policy, or in the absence of any evidence on the subject of a

condition, yet it is competent for defendant to show by parol that the policy was delivered upon a condition which had not been fulfilled, *e. g.*, that the policy was delivered on approval only, and that the delivery was on condition that deceased should give his note for the premium.

8. Contracts—*Delivery—Conditions—Parol Evidence to Show that Delivery was Conditional—Seals and Sealed Instruments.*—If an unsealed paper, whether negotiable or not, is perfect on its face, but is delivered to the payee or any person on condition that the instrument is not to take effect except 'n a given event, or under conditions, or is only to be used for a given purpose, the condition is binding between the original parties, and in a suit between them parol evidence is admissible to show the conditions. The same rule applies in Virginia, where the instrument is sealed.

9. Insurance—*Policy—Conditional Delivery—Waiver of Prepayment of Premium.*—It would seem on principle that in all cases where policies are put into the hands of applicants for the purpose of examination, or subject to rejection, such delivery should be considered conditional, and not as constituting a waiver of condition of prepayment.

10. Insurance—*Policy—Delivery Upon Condition—Parol Evidence—Waiver of Prepayment of Premium.*—There is no reason why a policy of insurance should stand on a different footing from any other contract. Like other contracts, it may be delivered upon condition, and until the condition is performed the delivery is not effectual to complete the contract. Although the contract of insurance is in writing, it may be shown by parol that the delivery was upon condition, and whether or not the delivery was upon condition is a question to be determined by the jury upon the evidence submitted, including, of course, the parol testimony. A mere delivery for inspection or for approval accompanied by the declaration that the policy is not to be effective unless and until the first premium is paid is not a waiver of the requirement of prepayment.

11. Insurance—*Instructions Ignoring Evidence.*—In an action on an insurance policy where the defense was that there had never been an acceptance of the policy by the deceased, and that the delivery of the policy to the deceased had been conditional upon his payment of the first premium, instructions assuming an unconditional delivery of the policy and ignoring the testimony of defendant that the delivery was conditional were objectionable.

12. Instructions—*Cure of One Instruction by Another—Error and Omissions—Appeal and Error—Error in Instructions.*—While omissions in one instruction or set of instructions may sometimes be supplied by a fuller statement in one or more other instructions, where it would not confuse or mislead the jury, it is rare, if ever, that positive error can be so corrected. A material error in an instruction, complete in itself, is not cured by a correct statement of the law in another

instruction, as it is said that it cannot be told by which the jury were controlled. Hence in such case the verdict will be set aside, unless the court can see from the whole case that no other verdict could have been properly found.

13. APPEAL AND ERROR—*Harmless Error—Objection to Evidence—Same Evidence Elicited by Party Objecting.*—Where a party objecting to evidence admitted, as hearsay, had previously elicited the same evidence from the witness on cross-examination, the error, if any, is harmless.

14. APPEAL AND ERROR—*Judgment of Appellate Court—New Trial for Errors in Instructions where Verdict is not Plainly Wrong.*—Where the Supreme Court of Appeals is unable to say that the judgment of the trial court overruling a motion for a new trial on the ground that the verdict is contrary to the law and the evidence is "plainly wrong or without evidence to support it," and hence cannot set said judgment aside and enter a judgment for the appellant, but for errors in the instructions the judgment must be reversed, the case will be remanded for a new trial.

Error to a judgment of the Corporation Court of the city of Staunton, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Quarles & Pilson,* for the plaintiff in error.

*Timberlake & Nelson,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

This is a proceeding by motion to recover a judgment upon two policies of insurance. One for $500.00 on a life insurance policy, and the other for $2,000.00 on an accident policy. There was a verdict and judgment in favor of Gulley's administratrix for $2,500.00—the full amount of the two policies.

The defense relied on was that there had never been an unconditional delivery of the policies to Gulley and accepted by him, and that the first premium had never been paid, nor had credit been extended therefor, nor prepayment waived. The grounds of defense stated, were:

"First, because C. H. Gulley in his lifetime did not pay the premiums, or either of them, for the policies of insurance in the notice mentioned and never accepted the said policies, or either of them.

"Second, because the said policies were sent by H. S. Rawlings, agent for the defendant, to the said C. H. Gulley by mail on the condition that he pay the first premium for said policies and accept the said policies, but said C. H. Gulley never paid said premiums, or either one of them, and never accepted said policies, or either one of them.

"Third, because H. S. Rawlings, agent for the defendant, submitted the said policies to C. H. Gulley on condition that he approve or accept the said policies and pay the premiums therefor by note executed by him to H. S. Rawlings, and he never approved or accepted said policies, or either of them, and never executed a note for said premiums.

"Fourth, because the application for both of said policies provides that neither policy shall take effect until the first premium shall have been actually paid while said Gulley was in good health and said Gulley never paid the first premium on either policy."

The exact position of the Insurance Company is thus stated by its counsel:

"Was the policy of the Reliance Life Insurance Company ever accepted by C. H. Gulley and was the first premium thereon ever actually paid by him?

"Upon the answer to this question the proper decision

of this case rests. We earnestly submit that a careful analysis of the testimony shows that the Reliance policy was only delivered to Gulley on approval and for inspection, that Gulley never had accepted the Reliance policy, and that he had never paid the first premium due thereon. We are confident that the court will find no evidence in this record to show an absolute delivery of the Reliance policy and an acceptance of the policy by Gulley, and we think we can show very clearly from the evidence that the Reliance policy was delivered only conditionally and for inspection."

Charles H. Gulley, the deceased, first applied to H. S. Rawlings, agent for the Reliance Company for the full amount of insurance desired, but the company refused it on account of his occupation and family history, and thereupon Rawlings undertook to "broker" him in the Travellers Insurance Company for a part of the amount desired, so that the applications for policies in the two companies were pending at the same time. E. R. Cover was the agent of the Travellers Company to whom Rawlings applied for the insurance in that company. The policies in the two companies were first submitted to Charles H. Gulley, August 15, 1920, and it is claimed by the Reliance Company, and testified to by Rawlings, that there was enclosed with the policies the following letter, signed by Rawlings by name "Buck," the name he generally used in his letters to Gulley, and spoken of in the record as the typewritten letter:

"H. S. Rawlings,                    James H. Reed,
    "*General Agent.*                    *President.*

"RELIANCE LIFE INSURANCE COMPANY
    "of Pittsburg, Pennsylvania,

"VIRGINIA DEPARTMENT
    "511-12 Mutual Building,
    "Richmond, Virginia.

"Aug. 15, 1920.
"Dear Gulley:
. "Your letter received and I must say that the reason
I brokered you through the Travellers at the same time
I sent your application in to my company was the fact
that you being a mail clerk makes it very hard to get
accident and health insurance. Nevertheless you can
get life with very little trouble. Also Chas. your family
history makes health insurance hard to secure.

"Understand you do not have to take these policies,
but I would suggest that you do, as I think they are the
best you can buy and then too the cost is small.

"Please let me hear from you regarding same, thank-
ing you in advance with kindest regards to Mrs.
                    "Sincerely
                                        "Buck."

There was enclosed with the policies a note for $72.54,
the aggregate of the premiums on the two policies, to be
signed and returned by Gulley, if he accepted the poli-
cies. Rawlings testified that these policies and the
note unsigned were returned to him, by mail, at Rich-
mond with a pencil memorandum attached, the con-
tents of which do not appear from the record. Raw-
lings further testified that he returned, by mail from

Richmond, the same policies to C. H. Gulley in Staunton, Virginia, on the 24th day of September, 1920, with a notation on a piece of scratch paper attached to the Reliance policy "My (his) policy is worth $27.41" and "you had better let your conscience be your guide," and on a piece of scratch paper attached to the Travellers policy "See cover," and enclosed with the policies was the note for $27.41, the premium on the Reliance Life Insurance Company's policy, and the said policies, the note for $27.41, and pieces of scratch paper with said notations thereon, were all inclosed in a large envelope and mailed at Richmond, Virginia, addressed to "Mr. Chas. Gulley, N. Coal St., Staunton, Va.," and on the left upper corner of the envelope was in print "After 5 days return to Reliance Life Insurance Company of Pittsburgh, Virginia Department, 511-12 Mutual Building, Richmond, Virginia," the said address being in the handwriting of H. S. Rawlings, agent. The said note for $27.41, amount of premium on the Reliance Life Insurance policy, was returned about October 1, 1920, by mail to H. S. Rawlings unsigned, and H. S. Rawlings thinking that C. H. Gulley intended to sign the same and failed to do so, at once returned the note to C. H. Gulley, by mail from Richmond, marking the place for him to sign; but never heard from him again. Rawlings also testified that along with the policies and the note for $27.41 mailed from Richmond on September 24, 1920, he enclosed the following note, in his own handwriting, but without date:

"RELIANCE LIFE INSURANCE COMPANY
"of Pittsburgh, Pennsylvania,
"James H. Reed, *President.*

"VIRGINIA DEPARTMENT
"511-12 Mutual Building,
"Richmond, Virginia.

"H. S. Rawlings,
    "*General Agent.*
"Dear Gulley:
    "I am enclosing two policies for your approval, also note which you may fill out ,one policy paying you $2,500 at death and $10 per week and the, other $1,000 at death and $20.00 per week. The first one will cost you $27.14— the second $45.40. Take your pick—or both and return signed note and oblige

"Sincerely

"Buck."


Gulley, who was a railway mail clerk, was killed in a railroad accident on October 6, 1920. On the morning of October 8, 1920, there was found in the desk of Gulley, at his residence, the policies of insurance in the Reliance and Travellers companies aforesaid in the envelope aforesaid, postmarked Richmond, Va., September 24, 1 p. m., 1920, along with the unsigned note for $27.41. There is conflict in the testimony as to whether one or two letters from Rawlings to Gulley were found with the policies. It is admitted, however, that what is spoken of as the typewritten letter was so found. Rawlings testified that the undated letter in his handwriting was also found with the policies. Rawlings also testified that he never saw or heard from Gulley after he returned to Gulley the note for $27.41 for his signature.

He fixed the date of the return somewhere between the 1st and 4th of October, 1920.

At the trial, six instructions were given at the instance of the plaintiff, to all of which the defendant objected, but the objections were overruled and the defendant excepted. Instruction A was as follows:

"The court instructs the jury that the law presumes from the fact that the policy in question was received by the insured and filed by him in his desk among his papers and there retained by him until his death, that he had accepted the same subject to all of its terms and conditions. The acceptance by an insured of a policy of insurance, when the same has been submitted to him in complete form by the insurer, may be inferred from his conduct in retaining it or from any act or declaration on his part manifesting his purpose to accept it."

[1, 2] The first part of this instruction is bad because it takes away from the jury the consideration and determination of the very fact in issue. It tells the jury that the law presumes, upon the facts therein stated, that "the policy in question" has been accepted by Gulley. There was testimony that the policy was sent to Gulley on approval and along with it a note to be signed by him for the first premium; that the note had been sent to Rawlings unsigned; that he had returned the note for signature about October 1, and that Gulley had left home about the time he received the note and had not returned thereafter before his death on October 6. There is no evidence that the policy was to be treated as delivered unless Gulley gave the note for the first premium. When the two policies were returned to Gulley for approval, according to the testimony of Rawlings, there was also enclosed the undated letter in the handwriting of Rawlings hereinbefore quoted requesting the return, signed, of the note for $27.41 enclosed—the pre-

mium on the Reliance policy. The circumstances under which the policy was sent to Gulley, and the facts attending his return thereof to Rawlings, and the subsequent acts and dealings of the parties, should have been submitted to the jury, and they should have been allowed to decide whether there had been such a delivery and acceptance of the policy as bound the company. The testimony of Rawlings, a witness on behalf of the company, had a very important bearing on the liability of the company, and should have been submitted to the jury. His credibility was a question for the jury.

[3] The latter part of the instruction is also objectionable. Outside of the fact that Gulley put the policy in his desk, there is no evidence of any act on his part from which an acceptance of the policy could have been inferred, nor could the insurance company be adversely affected by any uncommunicated "declarations" on the part of Gulley. This part of the instruction was misleading.

[4] Instruction B was as follows: "The court instructs the jury that if they believe from the evidence in this case that the policy or policies in controversy were found after the death of Charles H. Gulley in his possession and among his effects, then the law presumes that said policy or policies were delivered to him by the defendant company as valid and subsisting contracts, without any condition of any sort attached to them."

[5] This instruction would have been a correct statement of the law if it had said that "the law presumes, *in the absence of evidence to the contrary*, that," etc. But it ignores all of the defendant's evidence tending to show that the policies were not to be effectual unless and until Gulley paid the premium or gave Rawlings his note for the amount thereof. If Rawlings was to be credited, the policies were delivered on condition that Gulley was

to give his note to Rawlings for the amount of the premium, which he never did. The policy itself expressly provides that the contract of insurance "shall not take effect until the first premium shall have been actually paid while I am in good health," and further, "Agents are not authorized to modify this policy or extend the time for paying a premium." Under these terms there could be no recovery on the policies unless the premium was prepaid, or compliance with the provision thereof was waived. The instruction correctly stated the law where there had been an absolute and unconditional delivery of the policy, or simply proof of delivery without more; but the insurance company offered the testimony of Rawlings, the letters written by him to Gulley, and the unsigned note for $27.41, which Rawlings testified were found in the envelope with the policies after the death of Gulley, to rebut the presumption, and to show that the policies were not delivered to Gulley under such circumstances as would justify the inference that credit was to be given for the premium. *Life Ins. Co.* v. *Hairston*, 108 Va. 832, 848, 62 S. E. 1057, 128 Am. St. Rep. 989, quoting Vance on Ins. p. 178. The instruction should have been framed as above indicated, so as to have permitted the jury to consider this evidence in determining whether or not the policies were delivered "as valid and subsisting contracts, without any condition of any sort attached to them." According to the testimony of Rawlings they never were so delivered. Whether or not the jury would have believed the statements of Rawlings is not a question for our consideration.

[6] Instruction C, given for the defendant, is subject to similar criticism to that made of Instruction B. Instruction C was as follows:

"The court instructs the jury that inasmuch as the

policy or policies in controversy in this case acknowledge receipt of the premium and recite that they were issued in consideration of that premium, the law presumes that, as between the company and the deceased, the premium was considered as fully paid. The court further tells the jury that when the said policies were delivered without requiring payment of the premium the presumption is that a credit was intended and this was a waiver of the condition of prepayment set out in the application for said policy or policies."

The instruction is a correct statement of the law where there has been an unconditional delivery of the policy, but not where the delivery of the policy and the payment of the premium, or giving a note therefor, are to be coincident. The assured cannot take the policy and claim the benefit thereof without complying with his part of the contract. The instruction cut the defendant off from the benefit of the testimony of Rawlings and the written evidence on that subject. It should have stated that "the law presumes, *in the absence of evidence to the contrary,*" etc., and left it to the jury to say whether or not they would credit the evidence offered to the contrary. The presumption was not a conclusive one, but was open to explanation; and this explanation the insurance company offered to make.

[7-9] It is earnestly insisted by counsel for the assured that the insurance company is estopped from denying that the first premium had been paid because Gulley had possession of the policy at the time of his death, and the policy acknowledged the receipt of the first premium. A number of authorities are cited to sustain the proposition, and, for the purposes of this case, it may be conceded that such is the law in case of an unconditional delivery of the policy, or in the absence of any evidence on the subject of a condition. But in the case at bar,

the defendant's contention is that the policies were delivered on approval only, and that the delivery was on condition that Gulley should give his note to Rawlings for $27.41. In support of this contention the defendant offered the testimony of Rawlings, and his letter to Gulley accompanying the policies, which were sent by mail. . If the jury believed the statements of Rawlings as to the circumstances of delivery of the policy, then there was no estoppel, and if they further believed that the premium had never been paid and no note had been given by Gulley to Rawlings for the amount of the premium, then there was no liability upon the policies. In other words, it was competent for the defendant to show by parol that the policies were delivered upon a condition which had not been fulfilled. If an unsealed paper, whether negotiable or not, is perfect on its face but is delivered to the payee, or any person, on condition that the instrument is not to take effect except in a given event, or under given conditions, or is only to be used for a given purpose, the condition is binding between the original parties, and in a suit between them parol evidence is admissible to show the conditions. *Solenberger* v. *Gilbert*, 86 Va. 778, 11 S. E. 789; *Burke* v. *Dulaney*, 153 U. S. 228, 14 Sup. Ct. 816, 38 L. Ed. 698; *Catt* v. *Olivier*, 98 Va. 580, 36 S. E. 980; *Kelly* v. *Oliver*, 113 N. C. 442, 18 S. E. 698; *McCormick* v. *Faulkner*, 7 S. D. 363, 64 N. W. 163, 58 Am. St. Rep. 839; *Ware* v. *Allen*, 128 U. S. 590, 9 Sup. Ct. 174, 32 L. Ed. 563. The same rule applies in this State where the instrument is sealed, as was pointed out in *Whitaker* v. *Lane*, 128 Va. 317, 104 S. E. 252, 11 A. L. R. 1157. It was not simply whether the company was estopped by the acknowledgment in the policies that the first premium had been paid, but had the policies been delivered to Gulley under such circumstances as would entitle him to rely upon

31

the estoppel, if there was one. The company undertook to show that there had been no such delivery. The trial court admitted the evidence on the subject, but in effect cut the jury off from its consideration by the instructions given for the plaintiff, and this we think was error. In concluding a discussion of waiver of agreement for prepayment, it is said in Vance on Insurance, p. 178:

"It would seem, on principle, that in all cases where policies are put into the hands of applicants for the purpose of examination, or subject to rejection, such delivery should be considered conditional and not as constituting a waiver of condition of prepayment." Citing numerous authorities.

In *Mutual Life Ins. Co.* v. *Oliver*, 95 Va. 445, 451, 28 S. E. 594, 597, it is said: "The *policy not having been delivered* and the blank in the application for the insurance not having been filled, there is no unequivocal acknowledgment of receipt of the premium, or any such acknowledgment of its receipt, as would estop the defendant company from proving that it had not been paid or waived. Consequently, evidence was admissible to that end, and the question propounded to the witness was one proper to be asked and answered." (Italics supplied.)

[10] There is no reason why a policy of insurance should stand on a different footing from any other contract. Like other contracts, it may be delivered upon condition, and until the condition is performed the delivery is not effectual to complete the contract. Although the contract of insurance is in writing, it may be shown by parol that the delivery was upon condition, and whether or not the delivery was upon condition is a question to be determined by the jury upon the evidence submitted, including, of course, the parol testi-

mony.   A mere delivery for inspection or for approval accompanied by the declaration that the policy is not to be effective unless and until the first premium is paid is not a waiver of the requirement of prepayment.   *Snyder* v. *Nederland L. Ins. Co.*, 202 Pa. 161, 51 Atl. 744; *Rey* v. *Equitable Life Assurance Society*, 16 App. Div. 194, 44 N. Y. Supp. 745; *Quinby* v. *N. Y. L. Ins. Co.*, 71 Hun 104, 24 N. Y. Supp. 593; *McDonald* v. *Providence Saving L. Assurance Society*, 108 Wis. 213, 84 N. W. 154, 81 Am. St. Rep. 885.

[11] The instruction is also objectionable in stating that "the court tells the jury that *when* the said policies were delivered without requiring payment of the premium" etc.: This assumes an unconditional delivery, thereby ignoring the testimony of Rawlings and the other evidence on the subject.   It should have stated *if* they were delivered under the circumstances mentioned.

Instruction E assumes an unconditional delivery of the policy.   If again tendered this assumption should be removed by inserting the word "unconditionally," between the words "such agent" and the words "delivers a policy."

[12] The trial court was liberal in granting instructions to the defendant, some of which cover the objections made to instructions given for the plaintiff, but the errors in the instructions given for the plaintiff were not corrected by the instructions given for the defendant.   While omissions in one instruction or set of instructions may sometimes be supplied by a fuller statement in one or more other instructions, where it would not confuse or mislead the jury, it is rare, if ever, that positive error can be so corrected.   A material error in an instruction, complete in itself, is not cured by a correct statement of the law in another instruction, as it is said that it cannot be told by which the jury were con-

trolled. Hence, in such case the verdict will be set aside, unless the court can see from the whole case that no other verdict could have been properly found. *Amer. L. Co.* v. *Whitlock*, 109 Va. 238, 63 S. E. 991; *Powhatan L. Co.* v. *Affleck*, 115 Va. 643, 79 S. E. 1054; *Southern R. Co.* v. *Snow*, 117 Va. 627, 85 S. E. 488; *Va. & S. W. R. Co.* v. *Skinner*, 117 Va. 851, 86 S. E. 131; Burks' Pl. & Pr. (2nd ed.) sec. 261, and cases cited.

[13] Exception was taken to the action of the trial court in permitting a witness to answer a certain question, on the ground that it was hearsay. The only thing in the answer that could have been hurtful to the insurance company was the statement of the witness that Gulley said to him "Yes, I have taken out a policy with Buck." But the witness had been previously examined on behalf of the plaintiff, and, on cross-examination by counsel for the insurance company, stated substantially the same fact as was elicited by the question objected to. He was asked on his first examination by counsel for the insurance company: "And all your brother-in-law told you was that he had closed the deal and taken the insurance?" To which he replied: "Yes, sir." The error complained of, if any, was harmless.

[14] We are unable to say that the judgment of the trial court overruling a motion for a new trial, on the ground that the verdict is contrary to the law and the evidence, is "plainly wrong or without evidence to support it," and hence cannot set said judgment aside and enter a judgment for the defendant, as we have been asked to do; but for the errors of the trial court in the instructions given to the jury its judgment will have to be reversed, the verdict of the jury set aside, and the case remanded for a new trial to be had in accordance with the views hereinbefore expressed.

*Reversed.*