# Wytheville

L. C. WRIGHT, ET AL. v. KIRBY E. VIAR, AN INFANT, ETC.

June 14, 1934.

Present, Holt, Epes, Hudgins, Gregory and Chinn, JJ.

The opinion states the case.

*Caskie & Frost,* for the plaintiffs in error.

*Basil G. Watkins,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

Kirby E. Viar, an infant, by J. E. Viar, his next friend brought an action against Wright and Forbes to recover damages for personal injuries sustained by him as a result of a collision between a motorcycle driven by him and a Ford sedan used as a delivery truck by the defendants.

This writ of error is being prosecuted from a verdict and judgment in favor of the plaintiff.

The parties will be referred to as plaintiff and defendants, the position they occupied in the trial court.

The collision occurred at ten o'clock on Saturday night on Main street at a point just west of Ninth street in a business district of the city of Lynchburg. Main street runs north and south and Ninth street runs east and west. The thoroughfare was crowded and cars were parked on both sides of Main street. The defendants' delivery truck, which was cream colored, was parked on the east side of Main street, facing north, within the parking zone set apart for parking purposes. The zone extended towards Ninth street to a point within seven feet of the crossover lanes designated for pedestrians' use in crossing Main street at the intersection. The truck was the last vehicle parked in the zone from Ninth street. In front of it were other parked cars and one was immediately in front of it. In the center portion of Main street are the double tracks of the street car company.

According to the testimony of the plaintiff's witnesses, he was riding his motorcycle north on Main street, crossing Ninth street as it intersects with Main. He was proceeding slowly and just as he was within approximately

seven to ten feet of the rear of the truck, it was driven out from the curb rapidly. One witness said "he came out so quick," while another said "he came out in a rapid way." Another witness said "this fellow shot right out." The plaintiff collided with the left rear end of the truck and was injured. One witness said that the truck was damaged on its left rear side. He said that there was a fresh mark on the left rear wheel and bumper and that the hub cap on the left wheel and left fender appeared as though they had been "scraped." Another car was being driven from the opposite direction of Main street and it prevented the plaintiff from driving around the truck because there was not sufficient space between this other car and the delivery truck for the plaintiff to have driven his motorcycle. At the time of the impact the truck had been driven from the parked or standing position next to the curb, a short distance estimated at from eight feet to the length of the truck.

The plaintiff in answer to the question on direct examination, if the driver of the truck gave any signal indicating that he was going to leave the crub and enter the traffic lane, answered "No sir" and when asked if he was looking for a signal, replied, "I was looking in front of me." He also said he had no reason to expect that the truck would be driven from the curb until it was too late to avoid the collision and that if a signal had been given he would have seen it because he was looking ahead.

■ Since the verdict was in favor of the plaintiff, we must accept the testimony of the plaintiff's witnesses, if it is sufficient to sustain the verdict.

■ It was alleged in the notice that the driver of the truck failed to give the required signal before leaving the standing position at the curb; that he drove the truck out from the curb recklessly and directly in front of the motorcycle on which the plaintiff was riding; that he failed to keep a proper lookout for traffic and that he drove the truck from one line of traffic to another line without giving any signal or warning and without first exercising

ordinary care to see that such movement could be made in safety.

There are four assignments of error but inasmuch as all of them pertain to the refusal of the court to set aside the verdict and enter judgment for the defendants because the verdict was contrary to the law and the evidence and without evidence to support it, the determination of the questions arising under that point will be decisive of all of the other assignments.

If the evidence was sufficient to sustain the verdict, the effect of the verdict would be to convict the driver of the delivery truck of actionable negligence and acquit the plaintiff of contributory negligence.

Code Supp. 1932, section 2154 (122) provides in part "(a) Every driver who intends to start, stop or turn, or partly turn from a direct line, shall first see that such movement can be made in safety, and whenever the operation of any other vehicle may be affected by such movement shall give a signal as required in this section, plainly visible to the driver of such other vehicle of his intention to make such movement," and subsection (i) of the same section provides that "Drivers of vehicles, standing or stopped at the curb or edge before moving such vehicles, shall give signals of their intention to move into traffic, as hereinbefore provided, before turning in the direction the vehicle will proceed from the curb."

The manifest intent and purpose of the General Assembly in enacting the statute was to minimize the dangers arising from situations such as we have here. One who has his car parked at a curb and desires to pull away and enter the traffic lane is charged by the statute with the express duty to first see that such movement can be made in safety to those who may be affected by his movement. This is a burden imposed upon him. In addition to this he is also charged with the express duty to give the statutory signal which must be plainly visible to other vehicles which may be affected by his intended movement. This is another burden imposed upon him. In

the performance of these duties he must exercise ordinary care. He must use the care commensurate with the dangers which such a situation presents. If no signal plainly visible is given by one at the curb of his intention to move into the traffic lane, then those using such lane have the right to assume that he will not move out in front of them. We do not infer that those using the lane are excused from keeping a proper lookout for dangers from such a source or any other source.

We must advert to the evidence to ascertain whether the driver of the delivery truck performed the duties the statute imposed upon him. Did he first see that he could move into traffic in safety and did he give a statutory signal, plainly visible, of his intent to do so to the plaintiff who was bound to be affected by his movement?

The driver of the truck testified that before he drove out from the curb he looked back and when asked how far back he could see he replied, "I don't know. I would say within the parking line to see if I didn't hit anybody in the parking line." This might indicate that he was looking for pedestrians who might have been crossing Main street at the Ninth street intersection immediately behind his truck, because there were no cars parked behind his truck. Again when asked how far back he could see, he answered, "I don't know. About the length of the car, I reckon." He was asked if he could have seen a car that might have been crossing Ninth street, which to its nearest line was at most only seven to ten feet behind him, and he answered, "No sir." And again in response to the question as to how far back he looked, he said, "Sitting on the driver's side if you look back you can't see any further than the end of your car. I didn't turn my head around in the car and look like this." He also said that he did not look out of the window of his car. Thus from his own testimony the jury could reasonably have concluded that he did not exercise ordinary care in performing the duty imposed upon him; that is, to first see that his movement could be made in safety to the plain-

tiff.  Certainly there was sufficient evidence to warrant the court in leaving the decision of the matter to the jury.

■ Did the driver of the truck give to the plaintiff a signal plainly visible of his intent to pull away from the curb and enter traffic?  The plaintiff testified that the driver of the truck did not give the signal.  He further testified that he was looking ahead.  But on cross-examination he stated that the truck was moving when he first saw it.  Two other witnesses testified that they did not see the truck driver give the signal.  On the other hand, the driver of the truck testified that he did give the signal.  This evidence, we think, was sufficient to submit the question to the jury.

■ Counsel for the defendants earnestly contend that as a matter of law, there was no causal connection between the failure of the truck driver to give the signal and the injuries to the plaintiff; that the cream colored truck was easily visible and in motion and they argue from this fact that if the plaintiff had kept a proper lookout he would have seen the truck moving out in time to have avoided the collision and therefore he was guilty of contributory negligence, as a matter of law.

Causal connection under the evidence in this case was a question of fact and not of law.  It was properly submitted to the jury.

■ There is no evidence that the plaintiff was guilty of contributory negligence unless it may be inferred from the physical facts.  But in our judgment the physical facts do not warrant any reasonable inference that the plaintiff was guilty of such negligence.  In any event the defendants ought not to complain of the court's action in submitting the question to the jury, for there was no substantial evidence of the plaintiff's contributory negligence.

Our conclusion is that the court committed no error in submitting the entire case to the jury for determination under the evidence introduced at the trial, and the judgment should be affirmed.

*Affirmed.*