## Wytheville

### E. R. WALKER, ADMINISTRATRIX, ETC. v. M. O. CROSEN, ET AL.

June 10, 1937.

Present, All the Justices.

The opinion states the case.

*Charles Pickett* and *John S. Barbour*, for the plaintiff in error.

*R. R. Farr, Wilson M. Farr* and *Harry A. Grant,* for the defendants in error.

GREGORY, J., delivered the opinion of the court.

Elizabeth Riley Walker, Administratrix of Marian Cornwell Harrison, instituted an action at law against Millesia O. Crosen and Wilby Crosen to recover damages of them for the wrongful death of Marian Cornwell Harrison which occurred by reason of an automobile collision. The present writ of error is prosecuted by the plaintiff to an adverse verdict and judgment.

Mrs. Harrison was 22 years of age at the time of her death, and she left surviving her, her husband and one infant son between one and two years of age.

Mrs. Harrison was a guest in an automobile (a Ford coach, 1932 model) which was being driven by her friend, Miss Anne Kern. H. K. Benham, an attorney and a relative of Mrs. Harrison was also a guest of Miss Kern. On the morning of May 20, 1933, about 10 o'clock, Miss Kern left Winchester with Mr. Benham. At Boyce, they were joined by Mrs. Harrison. All three of them were riding on the front seat of the coach. The seat, referred to as a "split seat," was divided in the middle and Miss Kern occupied the left side, while Mrs. Harrison and Mr. Benham occupied the right side. They were bound for Laurel, Maryland, where Mrs. Harrison's husband had a string of horses which belonged to Colonel Walker. Some of these horses were expected to be entered in the races there which were scheduled for that day. When they had reached a point about four miles west of Fairfax, their car collided with an approaching ice truck which was being driven by Wilby Crosen, the 16-year-old son of Mrs. Millesia O. Crosen, who was the owner of the truck.

The collision occurred about 11:30 a. m. and the weather was clear, the road dry, straight and comparatively level. No other traffic appears to have been near the scene. There were three eye-witnesses, Miss Kern, Mr. Benham and Wilby Crosen. After hearing the evidence and instructions of the

court, the jury rendered a verdict for the defendants which was approved by the court.

Error is assigned to the refusal of the court to set aside the verdict for the reason that it is unsupported by the evidence; that certain instructions were given which did not embody correct principles of law as applicable to the case, and certain instructions refused which did embody correct principles of law; and that the court refused to permit counsel for the plaintiff to ask certain questions of the veniremen upon their *voir dire* examination.

From a careful consideration of the entire record we have reached the conclusion that the essential question to be decided which will be determinative of the case is whether we may say as a matter of law that Wilby Crosen, the driver of the truck, was guilty of negligence which efficiently contributed to the death of Mrs. Harrison; and that she was free from contributory negligence.

It will not be necessary to discuss the evidence of Miss Kern or Mr. Benham. For a decision of the determinative question we are only interested in that of Wilby Crosen.

The photographs, plats and testimony furnish an adequate picture of the physical surroundings at and near the point of collision. As we have seen, Miss Kern was driving in an easterly direction while Wilby Crosen was driving westerly. They were approaching upon their respective sides of the highway. Wilby Crosen testified that Miss Kern was approaching at a "terrific speed." Again he said that her car was being driven at 60 miles per hour. He intended to drive across the highway to his left and enter a narrow driveway leading to the home of Mr. Kidwell. In order to do this it was either necessary to drive across Miss Kern's line of travel or wait until she passed. He chose the former and said that he gave a hand signal for the turn and proceeded across the highway into the private driveway of Kidwell at five or six miles per hour. When the front end of the truck had entered the driveway leaving the rear of it in the highway, the collision occurred. He also said that he gave the hand signal for the turn when he was yet 25 yards from a point opposite the drive-

way and *at that time* he had not seen the car of Miss Kern, but could have seen it if he had looked; that he first saw it when it was at a paper box 240 feet away and at that time its speed was "terrific,"—60 miles per hour. The next time he saw it he was making the turn and was about half way across the highway. The car was then at the culvert 118 feet away and he did not know whether the speed had been reduced. He was asked, "When you saw the car coming toward you at the rate of 60 miles an hour you made no further effort at warning and took no further notice of the car?" He answered, "No, sir." He was also asked, "And you driving a car at the rate of six miles an hour, drove it in front of a car which you thought was approaching at 60 miles an hour?" He answered, "Yes, sir," and in explanation, he said, "I thought I had time to get in there."

■ The testimony of Wilby as to where on the highway *the car of Miss Kern was* when he first began to make the turn to the left to enter the Kidwell driveway is not satisfactory. It is clear, however, that he drove across the highway when he had seen the swiftly approaching car when it was somewhere between the paper box and the culvert. The paper box was 240 feet away, while the culvert was only 118 feet away. It is thus clearly established by his own testimony that he drove his truck at five or six miles per hour across the highway and in front of the swiftly approaching car of Miss Kern, which he had actually seen a short distance away,—moving toward his truck at a "terrific" speed. He clearly convicted himself of negligence by his own testimony.

Under Code 1936, section 2154 (122) (a), this is required of a driver who intends to turn across a highway: "Every driver who intends to stop, turn, or partly turn from a direct line, shall first see that such movement can be made in safety * * *." See *Wright* v. *Viar*, 162 Va. 510, 174 S. E. 766.

■ The fact that Wilby Crosen had seen the approaching car and that he had noted its high speed placed upon him in such circumstances, (in the exercise of ordinary care), a high degree of vigilance to see that he could safely cross the highway. The high speed of the car alone should have been

sufficient to have caused him to increase his efforts to avert a collision. A collision could have been averted by him by the exercise of the slightest degree of care. When he saw the fast approaching car, quickly traversing the intervening distance between them, a delay upon his part of a very short time would have permitted the car to pass and averted the collision. He violated the terms of the statute and it was certainly an efficient cause, if not the proximate cause, of the collision.

We are not now concerned with whether Miss Kern was guilty of negligence. Whether she was or not can in no way relieve Wilby Crosen of the responsibility for his own negligence which we hold as a matter of law was either the sole proximate cause of the death of Mrs. Harrison or efficiently contributed thereto. In either event the defendants are liable unless Mrs. Harrison was guilty of contributory negligence.

The defendants make that contention but it is not supported by the evidence. The only evidence to which they point as sustaining the charge of contributory negligence is that Mrs. Harrison sat on the front seat of the car with the driver and Mr. Benham. It is clearly established that she did not sit on the left front "split" seat with Miss Kern, the driver. Likewise, it is clearly established that her occupancy of the right "split" seat with her relative, Mr. Benham, in no way interfered with the operation of the car by Miss Kern. Under these circumstances we are driven to the conclusion that Mrs. Harrison was guilty of no negligence and that no instruction should have been given on contributory negligence because of the entire lack of evidence to sustain it.

We do not think that any new principles of law are involved in this case. The relevant principles have been applied in many automobile cases. Citations of authorities and quotations therefrom would be a needless task for at most they would only accomplish reiteration of what we have so often said. Cases of this kind must be considered upon their own facts. The difficulty is not with the principles of law involved but in applying them to the varying facts of particular cases as they arise. A restatement of the controlling rule governing

the subject when there is sufficient evidence upon which a verdict is or is not supported can serve no good purpose.

When the jury was being selected to try the case the plaintiff sought to interrogate the members of the venire as to whether any one of them was interested in any casualty insurance company, or stockholders in any such company, or related to any stockholder or agent of such company, and whether any one of them was a stockholder in the American Surety Company, it being admitted that said company was the insurance carrier of the defendants. The court refused to permit the questions to be propounded to the veniremen but the court instead interrogated each member individually and disclosed the business or employment of each member. One was an accountant, five were farmers, one a carpenter, one an electrician and one a Frigidaire salesman. Each member of the venire, after stating his employment, stated in answer to additional questions by the court that he was not a stockholder in any corporation; that he had no "side line" business; that he had never filed suit or been sued as a result of an automobile collision, except one of them answered that he had been sued in Canada in connection with an automobile accident there. The court further ascertained that neither of them was related to any of counsel in the case nor was a client of any of the counsel.

We think that the examination by the court of the veniremen disclosed as to each of them that they were not interested in any casualty insurance company; that they were not stockholders or interested in the American Surety Company, the insurance carrier in this case; that they were not agents of insurance companies and that they were free from bias or prejudice in this case. The members of the venire having been sufficiently interrogated along this line, we do not think it was error to refuse to permit counsel for plaintiff to ask questions touching the same matters which had already been so fully and carefully developed. The information sought to · be elicited of the veniremen had, in substance, already been furnished as a result of the examination by the court.

We having reached the conclusion that Wilby Crosen

was guilty of actionable negligence and that Mrs. Harrison was free from contributory negligence, it becomes unimportant to discuss the instructions. The objections in relation to them will not arise upon a new trial because we are of opinion that the judgment complained of should be reversed, the verdict set aside and the case remanded to the trial court with the direction that a new trial be awarded (Code, section 6365) limited to the sole question of the *quantum* of damages, the liability of the defendant having been already established by the evidence.

*Reversed and remanded.*