# Richmond

## Donald J. Smith, et al. v. Oscar Lee Clark.

January 12, 1948.

Record No. 3266.

Present, All the Justices.

The opinion states the case.

*Rixey & Rixey*, for the plaintiffs in error.

*A. A. Bangel,* for the defendant in error.

MILLER, J., delivered the opinion of the court.

This action was instituted by Oscar Lee Clark, herein-after referred to as the plaintiff, against Donald J. Smith and Floyd W. Simpson, hereinafter referred to as defend-ants, to recover damages alleged to have been caused by the defendants. The two last-named parties were respec-tively the operator and owner of a truck which collided with an automobile driven by the plaintiff and resulted in personal injuries to him.

Upon the trial a verdict was returned by the jury in favor of the plaintiff and judgment entered thereon, of which the defendants here complain.

The collision occurred at about 7:30 P.M. on June 20, 1946, in Norfolk county, a short distance from the city of Portsmouth. The exhibits and testimony furnish an adequate and rather clear picture of the physical surround-ings and circumstances attending the event.

The immediate scene of the collision was at the inter-section of three well traveled streets known as Airline Avenue, Rodman Avenue, and Duke Street. Airline Avenue runs approximately northeast and southwest and is intersected by Rodman Avenue which extends in a northerly and southerly direction and so crosses Airline Avenue. At this point Duke Street intersects Airline and Rodman Avenues, crossing the former at about a right angle. Airline Avenue is forty feet wide and a main thoroughfare to and from the city of Portsmouth. Stop signs control traffic approaching on Rodman Avenue and Duke Street, but no such sign is upon Airline Avenue. On the east side of Airline Avenue, sixty to seventy-five feet north of its intersection with the north line of Duke Street, is Forehand's Filling Station. Rodman and Airline Avenues are each hard-surfaced and two-lane streets. From the ex-hibits filed in evidence, Rodman Avenue appears to be about forty feet wide, which is, as heretofore stated, the width of Airline Avenue. The width of Duke Street is not given.

Just prior to the accident, Donald J. Smith, the driver of the defendant's truck, had stopped at Forehand's Filling Station on the east side of Airline Avenue slightly north of Duke Street. In departing from this location, he drove a short distance northeasterly on Airline Avenue, which took him slightly away from the intersection. This course of his truck is disclosed by exhibits filed in evidence. He then made a left turn, crossed to the western side of that Avenue, proceeded in a southwesterly direction thereon and so approached its intersection with Rodman Avenue. As Forehand's Filling Station is some sixty to seventy-five feet north of Duke Street—that is, north of the three-street intersection,—the significance of such truck being that distance, or certainly fifty feet or more, away from the intersection when the driver completed this left turn near the filling station and proceeded in a southwesterly direction on Airline Avenue will hereinafter appear.

The plaintiff was at this time on Airline Avenue approaching Rodman Avenue from a southwesterly direction. The evidence discloses that he was driving at a speed of twenty-five or thirty miles an hour. The two vehicles, the defendants' truck proceeding southwesterly on Airline Avenue and the plaintiff's automobile northeasterly thereon, so approached each other and the point of ultimate collision. It appears that defendant Smith intended to turn left and enter Rodman Avenue. This movement required that he make a left turn and negotiate an obtuse angle. In order to effect this movement into Rodman Avenue, it was either necessary to drive across plaintiff's line of travel or wait until he had passed.

The defendant driver, Smith, after he had seen plaintiff's approaching automobile some three hundred feet away, undertook to make a left turn into Rodman Avenue across the course of the oncoming car. Plaintiff's automobile, while proceeding northeasterly on Airline Avenue, struck the defendant's truck which had been proceeding some sixty to seventy-five feet or more in a southwesterly direc-

tion on Airline Avenue as and when its driver undertook to make this left turn on Airline Avenue across plaintiff's path into Rodman Avenue. The right front part of defendants' truck was in contact with the left front of plaintiff's automobile.

The above recites the physical location, movements of the respective vehicles, and the manner in which the collision occurred.

It appears from the testimony, and in fact is conceded, that the evidence is amply sufficient to support the verdict.

The only question presented is whether Instruction 4 given on behalf of the plaintiff is erroneous, and, if so, does it, when read in connection with other instructions, constitute reversible error.

The factual situation presented by defendants' truck undertaking to cross the path of the plaintiff's car is of material importance. It is really the crux of the case. That the jury be correctly instructed upon the immediate and then duty imposed upon defendant in so making such movement is obviously vital. The degree of care required of the defendant driver, immediately before and while making such turn, may well be determinative of his responsibility in the premises.

The instruction in question is commonly known as a finding instruction and is as follows:

"The Court instructs the jury that the law required the defendant, before turning or partly turning from a direct line, to comply with the following provisions of the statute:

"First: To give a signal clearly visible to traffic that may be affected thereby of his intention to make a left-hand turn at least fifty feet.

"Second: To drive said automobile as close as practical to the right of the center of said intersection before making a left turn.

"Third: To see that said left-hand turn can be made in safety, and if you believe from the evidence that the defendant failed in the above particulars and that such

failure was the sole proximate cause of the accident, they should find a verdict for the plaintiff."

The provisions of the statute on which this instruction was based appear as portions of sections 2154 (121) and 2154 (122) of the Code of Virginia, Michie (1942).

The pertinent parts are as follows:

"Section 2154 (121). (a) Drivers of vehicles, * * * when turning to the left, shall pass beyond the center of the intersection and as close as practicable to the right of the center of such intersection * * * . For the purpose of this section the center of the intersection shall mean the meeting point of the medial lines of the highways intersecting one another."

"Section 2154 (122). (a) Every driver who intends to stop, start, or turn, or partly turn from a direct line, *shall first see that such movement can be made in safety,* and whenever the operation of any other vehicle may be affected by such movement shall give a signal as required in this section, plainly visible to the driver of such other vehicle of his intention to make such movement." (Italics ours.)

Subsections (b) and (c) provide the manner and means in and by which such signals shall be given. Subsection (f) provides when such signals are to be given and is as follows:

"(f) Such signals shall be given continuously for a distance of at least fifty feet before slowing down, stopping, turning, partly turning, or materially altering the course of the vehicle."

█ Timely and sufficient objections were taken to Instruction 4,—in fact it was objected to in three particulars. The first was to the effect that the evidence proves that the truck came to a stop immediately before the accident and that before starting a correct signal was given. And if that be not true, then there was no testimony disclosing that the truck traveled as much as fifty feet from Forehand's Filling Station before reaching the point where such left turn was to be made and therefore a literal compliance

with the statute was impossible. There is, however, evidence in the record that the defendants' truck had traveled some sixty to seventy-five feet or more from the service station before reaching the center of the intersection where the turn was to be made and that no stop was made before the collision. In view of this testimony, paragraph numbered "First" of the instruction was supported by evidence and there was no merit in this objection.

■ Objection was likewise taken to paragraph numbered "Second" of the instruction. This was on the ground that there was no evidence supporting the same. While there is no testimony definitely disclosing that in making the left turn defendant Smith failed to pass to the right of the intersection, however exhibit three, drawn and filed by the witness Forehand with his testimony, discloses that the driver may have failed to pass to the right of the center of the intersection. The exhibit, while not drawn to scale, appears to disclose that he passed across the center of the intersection and not to its right. We therefore conclude that this paragraph of the instruction is supported by evidence and the objection thereto is not well taken.

The last and most serious objection is to the paragraph numbered "Third" of the instruction. It is insisted that the driver is thereby made an insurer that the turn will be safely executed and that no such obligation should be, or is by law, imposed upon him.

This provision of the statute was discussed in the cases of *Wright* v. *Viar*, 162 Va. 510, 174 S. E. 766; *Walker* v. *Crosen*, 168 Va. 410, 191 S. E. 753. With reference to the legislative intent and the construction to be placed on the enactment, Mr. Justice Gregory had this to say in the *Wright Case, supra*, at page 514.

"The manifest intent and purpose of the General Assembly in enacting the statute was to minimize the dangers arising from situations such as we have here. One who has his car parked at a curb and desires to pull away and enter the traffic lane is charged by the statute with the express duty to first see that such movement can be made

in safety to those who may be affected by his movement. This is a burden imposed upon him. In addition to this he is also charged with the express duty to give the statutory signal which must be plainly visible to other vehicles which may be affected by his intended movement. This is another burden imposed upon him. In the performance of these duties he must exercise ordinary care. He must use the care commensurate with the dangers which such a situation presents."

In *Walker* v. *Crosen, supra,* at page 414, the duty or degree of care of a driver making a left turn across the path of an oncoming vehicle is thus expressed:

"Under Code 1936, section 2154 (122), (a), this is required of a driver who intends to turn across a highway: 'Every driver who intends to stop, turn, or partly turn from a direct line, shall first see that such movement can be made in safety * * * .' See *Wright* v. *Viar,* 162 Va. 510, 174 S. E. 766.

"[2] The fact that Wilby Crosen had seen the approaching car and that he had noted its high speed placed upon him in such circumstances (in the exercise of ordinary care), a high degree of vigilance to see that he could safely cross the highway."

▮ The phrase, "in the exercise of ordinary care", qualified the duty of the driver to "first see that such movement can be made in safety." While in making this movement he must, under the circumstances, be vigilant and observant, he is not an insurer of the safe execution thereof, but held to reasonable care to see that such is safely done.

In the case of *Virginia Elec., etc., Co.* v. *Holland,* 184 Va. 893, 37 S. E. (2d) 40, in commenting upon Code section 2154 (122), the court says at page 901:

"We measure the words, 'made in safety', used in the statute and used in instruction No. 7, by the rule of reason and the ordinary rule of human conduct under existing conditions. Seeing that a movement can be 'made in safety' does not mean that a driver of an automobile must wait at a crossing which is controlled by a traffic light for all street

cars to pass, even though they may be a sufficient distance away which, under ordinary conditions, taking into consideration all the attendant circumstances, would not render it unsafe to go across the tracks. There would appear to be no other rule to guide the operator of an automobile under these conditions than the one of ordinary care.

"From the argument of counsel for the defendant it appears that he gives to the statutory words, 'made in safety', the meaning that a movement can only be made when it can be done free from all possibility of danger. If movements in traffic could be made only when there were no possibility of danger, traffic would have great difficulty in moving at all."

This court has therefore interpreted this language, "first see that such movement can be made in safety", to mean that it is incumbent upon the driver to use reasonable and ordinary care under the circumstances to see that such movement can be made safely.

The language of the Code section is however susceptible of a construction that would impose upon the driver a higher degree than reasonable care. It could easily be interpreted by a jury as requiring an absolute duty to negotiate the turn without mishap. To guard against this construction, the court has determined that any instruction using the words of the statute, namely, "first see that such movement can be made in safety", must be qualified with appropriate language relieving the driver of the burden of insuring the safety of his turn.

It is urged by the plaintiff that if there be vice in such instruction it is cured by Instruction B which is as follows:

"The Court instructs the jury that the defendant Smith was not required to exercise extra-ordinary care to prevent a collision. All that was required of him was that he exercise ordinary or reasonable care. If you believe from the evidence that Smith operated his car with ordinary or reasonable care under all the circumstances, you should find for the defendants."

He maintains that a jury could not have been misled when the two instructions are considered together.

To this we cannot lend our assent. Instruction 4 is a finding instruction complete in itself and has to do with the precise movement and duty imposed upon the driver in making such turn. When, how, and in what manner this movement was made was the factual crux of the case. That the jury be correctly instructed thereon was vital and of material importance. Instruction B is general in its character and merely undertook to define the over-all degree of care to be exercised by the defendant driver on the occasion in question. By that instruction the care required is other and less than that imposed in Instruction 4. To such an extent it is in conflict with and not explanatory of Instruction 4. When such is the result, the error is not corrected. The jury may have been confused and misled as to their duty upon the most important aspect of the case.

The following authorities forcefully disclose the materiality and effect of such error: *Chesapeake Ferry Co.* v. *Hudgins*, 155 Va. 874, 156 S. E. 429; *Reliance Life Ins. Co.* v. *Gulley*, 134 Va. 468, 114 S. E. 551; Burks' Pl. & Pr. (3rd Ed.) sec. 259, and cases cited therein.

In *Reliance Life Ins. Co.* v. *Gulley, supra,* at page 483, the following apt and important statement is made:

"While omissions in one instruction or set of instructions may sometimes be supplied by a fuller statement in one or more other instructions, where it would not confuse or mislead the jury, it is rare, if ever, that positive error can be so corrected. A material error in an instruction, complete in itself, is not cured by a correct statement of the law in another instruction, as it is said that it cannot be told by which the jury were controlled. Hence, in such case the verdict will be set aside, unless the court can see from the whole case that no other verdict could have been properly found."

We therefore conclude that Instruction B did not cure the prejudicial error appearing in Instruction 4.

Nor is there any merit in the contention of the plaintiff

that the evidence as a matter of law establishes that the negligence of the defendant caused the accident and the plaintiff was free from any negligence. The hereinabove recital of the evidence discloses that these issues were clearly matters to be determined by the jury.

The judgment of the trial court is reversed and this case remanded for a new trial.

*Reversed and remanded.*