# Richmond

## Virginia Electric and Power Co. v. Audrey Pearl Steinman, an Infant, Etc.

April 21, 1941.

Record No. 2312.

Present, All the Justices.

T. *Justin Moore* and *Archibald G. Robertson,* for the plaintiff in error.

*Joseph J. Williams, Jr.,* and *Chas. W. Crowder,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

Audrey Pearl Steinman instituted an action by notice of motion for judgment against Virginia Electric and Power Company, claiming damages for injuries alleged to have been proximately caused by the negligence of the operator of one of the company's street cars.

The accident happened about twenty minutes past eight o'clock on the morning of September 27, 1938. The

street car, operated by its motorman, T. C. Childress, was proceeding along 8th street in Richmond, Virginia, going north. It had reached a point near the intersection of 8th and Broad streets where it was stopped by the traffic light. The course of the street car was west on Broad street. The plaintiff, a young girl sixteen years old, with her schoolmate, Joyce Mayne Frostick, a young girl about the same age, were *en route* to the John Marshall High School, where they were students. Miss Frostick's father drove them down town that morning and put them out on the west side of 8th street. They proceeded north along the sidewalk to Broad street, where they continued to go over between the lines made to designate the walkway for pedestrians, while the traffic light was green and permitted them to do so. The street cars make a wide circular turn to the left from 8th street into Broad, going north and westerly, and they occupy the east tracks on 8th and the north tracks on Broad street.

The young girls had crossed the south tracks on Broad street, which are used by cars traveling east on Broad and south on 8th street. They were approaching the first rail of the north tracks when Miss Steinman was struck by the left front corner of the car of the defendant company. She was knocked down, and in falling, knocked Miss Frostick down, and both of them are described in the evidence as rolling and being under the car. Miss Steinman's injury resulted in the amputation of a portion of the big toe of her right foot. The jury found a verdict in her favor and awarded her the sum of $2,500 as damages. This was confirmed by the trial court. The defendant company applied for a writ of error, which was granted by one of the justices of this court.

██ There is but one question for decision, and that is whether or not the testimony convicts the plaintiff of negligence as a matter of law which proximately caused or efficiently contributed to her injuries. If so, she is

barred from any recovery in this action. If plaintiff and the defendant were guilty of continuing and concurrent negligence up to the time of the accident, then, also, there can be no recovery for the plaintiff.

The verdict of the jury confirmed by the court entitles the plaintiff to have the evidence stated and considered in the light most favorable to her. The defendant company earnestly and vigorously contends that the evidence convicts the plaintiff of negligence, which proximately caused and contributed to her injury as a matter of law—and more—that her own evidence does so. Let us see if there is justification for this contention.

The plaintiff and her companion were within their rights when they proceeded across Broad street under the allowance of the green traffic light. This, of course, did not permit them to walk listlessly and heedlessly into or against a moving car. They testified that as they proceeded on their way they looked to the front and to the left and to the right, and were not engaged in conversation with each other, which naturally would take their attention from what they were doing. Miss Steinman testified in part as follows: ''We had passed about one track—we walked over one track and then the westbound car came right behind us and hit us at that time. * * * This track came around just like this (indicating) and it is four pieces of track, two for each car, and we had passed one of them when we saw the car like this come right behind me. * * *

''Q. Young lady, what I am asking you were you on the track that the street car was coming around on—

''A. Oh, no, not that one; the other track, the track nearest me. I hadn't gotten on the track that the car was coming around on, but I had passed one of the other tracks when I saw the car come real close to me, came behind us just like that (indicating).''

Miss Frostick testified that when she walked to the corner of 8th and Broad streets she looked to the right

and left and in front and that she did not at any time see the car.

W. R. Lecky, who was standing on the southwest corner of 8th and Broad streets waiting to take a southbound car testified in part as follows:

"Q. Would you mind telling the jury whether the motorman gave any signal or warning?

"A. Absolutely didn't touch a bell. If your Honor please, the reason I was emphasizing that grease is the only way I can reason it out that the car made no noise coming around, wasn't that screech to it, and the car was on top of them and those young ladies didn't know the car was anywhere near."

It will be noted that the two young girls asserted positively that as they crossed Broad street they looked to the left and to the right and in front of them. The plaintiff said that she did not look behind her because of her reliance upon the fact that the traffic light was with her. Miss Steinman emphasized, by repetition, that the car came up behind them without giving any warning of its approach. Miss Frostick and Mr. Lecky, by strong inference, emphasized both of the circumstances referred to.

The motorman was seated in the left-hand corner of the car, from which elevated position he had a range of view which commanded the entire situation. There was no traffic interference with his vision. He could and should have seen the two girls almost their entire way across Broad street. Indeed, he said that he saw them in time to have stopped. A view of the intersection and its incidents was had by the jury. Doubtless they saw street cars making the turn there. They do so every few minutes of the day. The situation there is potentially a dangerous one, particularly for pedestrians who have to cross over to the other side.

It is well settled, and this court has said so time and again, that the question of negligence, indeed all kinds of negligence—primary, contributory, continuous

and concurring—is one for the jury to determine. They are questions of fact, and the jury is the trier of such questions. It is only when the issue is one about which reasonable persons cannot differ—the question so plain in the meaning and interpretation that should be given to it—that no doubt is admitted of its legal significance and effect, that it becomes a question of law for the courts to determine. .

This court has frequently said in specific cases that the verdict of the jury and the judgment of the court were so palpably contrary to the law and the evidence as to constitute a denial of justice and under that and other potent circumstances we were not only justified but it was our bounden duty to set them aside. Can we say that of this case in the face of the facts and circumstances which we have narrated?

It is true that the evidence in this case is strong that the two girls walked into the car; some of the witnesses for the defendant said it seemed to them that they did so deliberately. This, of course, makes a decided conflict. The jury chose to accept the testimony of the plaintiff and adopt her version of it. We cannot say that the verdict is not founded upon credible evidence of related incidents and existing physical facts.

The case of *Virginia Electric & Power Co.* v. *Blunt's Adm'r,* 158 Va. 421, 163 S. E. 329, is authority for the statement that a pedestrian need not exercise the same care at an intersection as is required of him in crossing in the middle of the block in order to avoid a charge of contributory negligence.

In *Sawyer* v. *Blankenship,* 160 Va. 651, 169 S. E. 551, it is said:

"But if the hypothetical ordinarily prudent person could from the circumstances reasonably believe that the crossing could be made in safety and that there was no car sufficiently near to put him on notice of approaching danger, he is not required to be continually looking and listening to see if automobiles are approaching, un-

der penalty that upon failure to do so, if injured, his negligence must be conclusively presumed." See *Moore* v. *Scott,* 160 Va. 610, 169 S. E. 902, and *Core* v. *Wilhelm.* 124 Va. 150, 98 S. E. 27.

Cyclopedia of Automobile Law and Practice, Blashfield, Volume 2, Permanent Edition, Section 1431, page 480, says:

"The general rule that pedestrians have the same rights in highways as the drivers of motor vehicles, of course, applies at intersections where special provisions are frequently made for the protection of pedestrians, and although he cannot obstruct traffic at such places, he is under no legal duty to give way to automobiles and other motor vehicles, and where a pedestrian without negligence has committed himself to a public crossing, he has superior right of way as against a vehicle thereafter approaching."

In the case of *Erickson* v. *Grady,* 119 Cal. App. 596, 6 P. (2d) 1002, 1003, it was said:

"A pedestrian is not guilty of contributory negligence, as a matter of law, because of a failure to look behind him and discover an approaching car which may heedlessly run him down."

In the case of *Lucas* v. *Craft,* 161 Va. 228, 170 S. E. 836, it was said:

"Since we are dealing with a verdict and judgment it is plain that the evidence is sufficient to sustain it. We cannot as a matter of law say that the defendant was not guilty of negligence, and we cannot as a matter of law say that the plaintiff was guilty of contributory negligence."

The above is a condition similar to the one with which we are confronted.

The following is a quotation from the opinion, written by Gregory, J., in the case of *Virginia Electric and Power Co.* v. *Blunt, supra:*

"We are asked to hold as a matter of law that the deceased was guilty of such negligence as barred a re-

covery. If we should do this, then the pedestrian's right of way at the intersection would be meaningless and an empty fiction. It certainly is true that a pedestrian is not bound to exercise as much care at a crossing as he is required to exercise in crossing the street at places other than intersections. The term 'right of way' must have some bearing upon the relative rights of the parties and on the relative care required of them. If a pedestrian must exercise the same care at the intersection as is required of him in crossing in the middle of the block in order to avoid a charge of contributory negligence when run down by a street car (the motorman sounding no warning and keeping no lookout), then he has no right of way, but enters the intersection at his own peril just as he would do in entering any part of the street other than at an intersection. If the right of way means anything at all, it certainly puts the necessity of continuous observation and avoidance of injury upon the motorman when approaching a crossing, just as the necessity of the case puts the higher degree of vigilance upon the pedestrian at places other than intersections.''

We affirm the judgment of the trial court.

*Affirmed.*