# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## VIRGINIA ELECTRIC AND POWER COMPANY V. ERMA I. COURTNEY.

December 6, 1943.

Record No. 2692.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*T. Justin Moore* and *Archibald G. Robertson,* for the plaintiff in error.

*Thomas A. Williams* and *L. C. O'Connor*, for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

We are asked to reverse the judgment of the trial court upon the verdict of a jury awarding the appellee damages for personal injuries, alleged to have been caused by the negligence of the operator of one of the appellant's street cars.

The appellant contends, first, that the evidence discloses that the appellee was guilty of contributory negligence which, as a matter of law, barred a recovery, and, secondly, that there was error in a certain instruction to the jury.

The Virginia Electric and Power Company operates electric street cars eastwardly and westwardly on Venable street, in the city of Richmond, over a double line of parallel tracks. Westbound cars are operated over the northern track and eastbound cars over the southern track.

Mrs. Erma I. Courtney, on June 13, 1941, shortly before seven p. m., was struck by a westbound street car on Venable street at its intersection with Jessamine street as she was crossing from south to north on the west side of Jessamine street. It was daylight, the weather was clear, and the visibility good.

Venable street at its intersection with Jessamine street is about 34 feet wide from curb to curb. Jessamine street, from curb to curb, is 36 feet wide north of Venable street and 29 feet, 6 inches wide south of that street. Its width from property line to property line on the northerly side of Venable street is 66.01 feet. The double line of street-car tracks occupy about 15 feet of the center of Venable street.

Mrs. Courtney and her husband had been shopping. Returning home, they alighted from an eastbound street car, both loaded with packages. Mrs. Courtney was also carrying her sixteen months old baby on her right arm. They lived north of Venable street, and were homeward bound by the shortest route, after leaving the street car.

According to Mr. Courtney, the street car, upon which they were riding, stopped at the regular place to discharge passengers on the west side of the intersection of Jessamine and Venable streets. He and his wife stepped off the front of their car, walked from it to a point near the curb on the southwest corner, and waited until that car had crossed the intersection. He and his wife then started northwardly across Venable street, walking at a normal gait, within the pedestrian lane on the west side of Jessamine street, although there were no lines actually indicating that lane. When he reached the north rail of the track for eastbound cars, he looked to his right and saw a westbound car approaching about the middle of the block east of Jessamine street, a distance of approximately 132.5 feet east of the property line of Jessamine street. He saw several persons at the northeast corner apparently waiting to board the approaching westbound car. He did not notice the speed of that car. With his wife to his left, they continued across the westbound track, without quickening or lessening their speed. Mr. Courtney, however, advanced about one-half a step ahead of his wife. He did not see the westbound car again until it was about 6 feet from his wife. At that time, he had just cleared the tracks. He immediately dropped his packages and grabbed for his wife; but before he could reach her she was struck by the overhang of the car as she was about to clear the north rail of the westbound track. He further said that the motorman did not sound his gong or give any alarm before the collision.

Mrs. Courtney lost consciousness when she was struck, and testified that she remembered nothing after she alighted from the eastbound car until she subsequently regained consciousness in a hospital. She was seriously injured and her child was killed.

A witness, Lawrence Berry, testified that he was following the westbound street car in his automobile, and that it was running at a speed of from 25 to 30 miles an hour and went through the intersection of Jessamine and Venable streets without stopping to pick up prospective passengers waiting

for it at the northeast corner. He said he could see the motorman of the car through its windows, and that the motorman did not sound his gong, do anything to prevent the collision, or even raise his head at the time of the impact. He saw Mr. and Mrs. Courtney walking across the street, and said there was nothing to prevent the motorman of the westbound car from seeing them attempt to make the crossing. The car ran 45 feet after the collision.

Joseph Cox said he saw the Courtneys alight from the street car and wait for it to move, and then start across the tracks; that Mrs. Courtney was just past the last rail of the westbound track when she was struck by the overhang of the street car; that he did not see the car before it hit her or hear its gong sound; and that after she was hit he first heard the application of the car's brakes as the car began "dragging."

Several witnesses agreed that the Courtneys did not start northwardly across Venable street until the eastbound car had cleared them, and had proceeded on its way through the intersection. One witness testified that he thought it had cleared the intersection when they started across the tracks.

There were no traffic lights at the intersection.

D. C. Thaw, the operator of the westbound car, said that he crossed Jessamine street running about 10 miles an hour, and that the front of his car passed the rear of the eastbound car when he got about the property line on the west side of Jessamine street; but he couldn't remember whether the latter car was moving or not. He said he sounded his gong all the way across the street and until he had passed the rear end of the other car. He saw Mr. and Mrs. Courtney leaving the north rail of the eastbound car track. He put on his emergency brakes, and closed his eyes because he knew they would be struck and he did not want to see it. They were about 10 or 15 feet away from him when he first saw them, and he did not see them sooner because the other car obstructed his view. They kept on walking normally, and she stepped on the tracks in front of his car when it was about 5 feet away from them. His car struck Mrs. Court-

ney at a point about 15 feet west of the property line of Jessamine street. The car run approximately its length after the application of the brakes.

The motorman of the eastbound car said he stopped with the front of his car about even with the property line on the west side of Jessamine street; that he lost no time at the corner after discharging his passengers and moved on, passing the westbound car at about the center of Jessamine street.

Linwood Williams, a passenger on the eastbound car, was sitting in the motorman's seat at the back end of that car. He observed the Courtneys on his car and watched them as they got off at Jessamine street. He said that before the car started they began walking to its back; that when they got about halfway of the car it moved off; that they then started across the street behind his car and when his car was about the middle of the westbound car, the latter car hit Mrs. Courtney; and that she stepped on the westbound track when the westbound car was about 4 feet from her. He also testified that his car passed the eastbound car on the west side of Jessamine street.

Mrs. S. E. White, a passenger on the westbound car, said that she was sitting 8 or 10 feet behind its motorman, and from that position she first saw Mrs. Courtney when she was 20 feet from her car.

Several witnesses testified that Mrs. Courtney stepped on the westbound track when the westbound car was only 4, 5, or 7 feet from her, and another said 10 or 12 feet. Some thought she was struck by the center front of the car when she was in the middle of the westbound track. Others said that she was crossing the street west of the regular crossing line. Three witnesses testified that the westbound car stopped at the east side of Jessamine street to take on or let off a passenger. No witness could state definitely which car started first into the intersection.

Two police officers, who investigated the accident immediately after its occurrence, stated that they found large blood spots on Venable street about 42 feet, 3 inches west of the west property line of Jessamine street and a few

inches south of the south rail of the westbound track, and also some sand on the north rail at about the same distance from Jessamine street.

The jury was given a view of the scene of the accident, located in a residential district of the city.

The westbound car was 40 feet long, 8 feet, 2 inches wide. It had an overhang on each side, extending 21½ inches outside or over each rail. We are not told the measurements of the eastbound car.

A witness testified that a car running at 25 miles an hour goes about 36.8 feet a second; while running at 30 miles an hour it goes 44 feet a second.

No questions of the amount of the damages or the last clear chance are presented.

At the conclusion of the plaintiff's evidence and at the conclusion of all the evidence, the trial court overruled a motion to strike.

This was the second trial of the case. Upon the first trial the jury was unable to agree on a verdict.

The evidence is conflicting and contradictory upon all material points. Whether, under the peculiar circumstances, Mrs. Courtney was guilty of contributory negligence, and whether the motorman operated his street car at an excessive speed, without keeping a proper lookout and without sounding his gong, were questions for the determination of a jury, under proper instructions.

The appellant cites a large number of cases in support of the principle that one who neglects to look for a car when there is an unobstructed view, just before entering on the track, and is struck by a car before he can walk directly across the track, is guilty of neglecting his duty. This case is not as simple as that. There are other facts and circumstances which must be taken into consideration.

In *Virginia Elec., etc., Co. v. Wright*, 170 Va. 442, 196 S. E. 580, Mr. Justice Gregory excellently sets out the guiding principles applicable here, as follows:

"Whether a negligence case should be submitted to a jury or determined by the court must always turn on the

peculiar facts in the particular case. It accomplishes nothing to refer to and quote from all of the negligence cases that have been decided by this court. Nor will it be advantageous to try to reconcile the cases. The principles are well settled. The application of them to the varying facts is a difficult problem. No two cases are identical in their essential facts. Generally, negligence is for the jury and should not be taken from it unless there is a plain deviation from the evidence or it is palpable that the jury have not drawn the correct inference from the facts. This court has said time after time that if fair-minded men may honestly differ from the proofs submitted as to the negligence or contributory negligence charged, the question is not one of law, but one of fact for the jury under proper instructions from the court."

As said by Mr. Justice Browning in *Virginia Elec., etc., Co.* v. *Steinman,* 177 Va. 468, 14 S. E. (2d) 313, "It is well settled, and this court has said so time and again, that the question of negligence, indeed all kinds of negligence—primary, contributory, continuous and concurring—is one for the jury to determine. They are questions of fact, and the jury is the trier of such questions. It is only when the issue is one about which reasonable persons cannot differ—the question so plain in the meaning and interpretation that should be given to it—that no doubt is admitted of its legal significance and effect, that it becomes a question of law for the courts to determine."

The trial court gave nine instructions for the plaintiff and seven for the defendant, defining the respective duties and obligations of the parties.

The appellant contends that instruction number 5 was erroneous in that there was no evidence that the eastbound street car was standing when the other approached within ten yards of it.

Instruction number 5 reads as follows:

"When a moving car is approaching from the opposite direction a car which is standing, the motorman on the moving car shall, when within not less than 10 yards of the

standing car, slow down his car so as to have the same under proper control and continue to proceed slowly and cautiously until the front platform of his car has passed the rear platform of the standing car; and shall also, when within not less than 10 yards of the standing car, ring a gong or bell and continue to ring the same until after the front platform of his car has passed the rear platform of the standing car.

"The Court therefore tells you that if you believe from the evidence in this case that this ordinance was violated such act was negligence as a matter of law."

A court's instructions to a jury are always important, but never more so than where the evidence is in as strong conflict as here. They must be founded on the evidence and state the law applicable to the facts which the evidence tends to prove.

The testimony of the witnesses in this case is irreconcilable. The jury had the difficult duty of determining the true facts therefrom. Any instruction which withdrew their minds from that duty, or involved questions of fact not arising under the evidence was likely to mislead them or divert their attention from the legitimate points in issue.

Whether or not the motorman, Thaw, violated the ordinance was a question of fact. To convict him of the negligence defined in the instruction, the violation of the ordinance had to be proved.

After a careful scrutiny of the evidence, which we have hereinbefore set forth rather fully, we do not find anything which shows that the westbound car ever approached within not less than 10 yards of the eastbound car while that car was standing at the westerly property line of Jessamine street. If it be true, as the husband of the plaintiff positively testified, that the eastbound car had moved from in front of him and his wife before they started across the street, and he afterwards saw, as he reached the north rail of the eastbound track, the westbound car at a distance approximately 132.5 feet to the east, it is manifest that the eastbound car was not motionless at the western line of the intersection as the westbound car came within not less than 10 yards of it.

No witness undertakes to locate definitely the westbound car at an exact or approximate point from which, in consideration of the factors of time, speed of the cars, and the distances involved, there can be drawn a reasonable and satisfactory inference that the operator of the westbound car violated the provisions of the ordinance.

.Instruction number 5 permitted the jury to guess or speculate. Negligence of the operator of the westbound car in the violation of the ordinance cannot be presumed. It must be established by evidence. An inference must be based on facts disclosed by the evidence. It cannot be founded on another inference or on a mere guess.

Because the trial court erred in giving the instruction, its judgment is reversed, the verdict of the jury set aside, and the case remanded for a new trial.

*Reversed and remanded.*