## Richmond

GUY P. RIDDLE v. GEORGE LEE BARKSDALE.

April 20, 1953.

Record No. 3993.

Present, Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Langhorne Jones,* for plaintiff in error.

*Joseph Whitehead, Jr., W. C. Thompson,* for defendant in error.

MILLER, J., delivered the opinion of the court.

Plaintiff, George Lee Barksdale, was injured when an automobile that he was driving collided with the rear of a truck owned by defendant, Guy P. Riddle, and operated by his agent

and employee, James L. Walden. When the accident occurred, plaintiff was only eighteen years old, but within ninety days thereafter he instituted this action in his own name and recovered a verdict of $2,000. The verdict was rendered on July 25, 1951, when plaintiff was twenty years old, and from the judgment entered against Riddle on that day, we granted him an appeal.

Defendant does not contend that his driver was free from negligence, but he asserts that the evidence conclusively shows that Barksdale was guilty of contributory negligence, and for that reason he says the judgment should be vacated and final judgment entered in his favor. If that be not done, then defendant relies upon the fact that the record discloses that plaintiff was under twenty-one years of age when he instituted this action in his own name and obtained a verdict and judgment. He insists that the proceeding was and is wholly void because it was instituted and prosecuted by the infant without a next friend.

Defendant's first contention requires that the facts and circumstances surrounding the collision be fully stated.

The accident took place after dark on November 8, 1950, about 6:30 o'clock p.m. on U. S. Route 29 in Pittsylvania County. Where the mishap occurred, the highway, which is twenty feet wide, extends in a northerly and southerly direction, and it is divided in the center by a white line. Southward from the point of collision, the road is substantially straight, and by day there is a clear and unobstructed view for about 850 feet. Yet the evidence discloses that some 100 feet or thereabouts south from where the impact took place there is a slight curve in the road which tends to prevent the headlights of a north bound car from shining directly upon a vehicle preceding it at that particular location.

Both vehicles were headed north, the truck preceding the passenger car, and they had been going in that direction for some time before the accident happened. Yet it does not appear that the two vehicles were sufficiently close to each other for the driver of the passenger car to have seen the truck ahead until immediately before the collision. At that time the passenger car which was being driven at a greater speed than the truck had overtaken that vehicle.

The flat-bottomed truck operated by defendant's employee,

Walden, weighed about 4,800 pounds, and it was loaded with 8,000 to 10,000 pounds of one-inch thick, 12-foot long oak boards, making an over-all weight of about 13,000 to 15,000 pounds. Riding in the truck with the driver was Haywood Townes, another of defendant's employees, and plaintiff was accompanied by Emmett O'Neill. The physical facts show that plaintiff's car, which was proceeding along the 10 foot wide northbound lane of the road struck the rear part of the truck slightly to the left of its center. Marks upon the highway disclosed that the passenger car had skidded about 53 to 58 feet before it collided with the truck. A solid black line extended 33 feet southward from the point of impact and then there were a number of short skid marks for 20 or 25 feet more. These marks indicated that plaintiff began applying his brakes some 53 feet or more south of the point where his car ultimately struck the truck. In describing the skid mark which extended southwardly from the immediate place of impact, Sheriff D. K. Hall said: "This car had slid a distance of 30 feet, a solid black line." He thereafter said this solid skid mark was 33 feet instead of 30 feet, and he also described the other skid marks which extended 20 to 25 feet farther southward as being lighter and broken.

When the passenger car struck the truck, the latter vehicle had actually stopped or was moving very slowly preparatory to stopping. The force of the blow moved or aided in moving the truck 27 feet. The impact was sufficiently severe to break the cross members or bars that held together its platform, and the floor boards were driven forward into the cab. When the truck was struck, it was knocked or propelled forward from under the lumber, which slipped off its rear onto the front of the passenger car. Plaintiff's car was badly damaged, he was injured, and his passenger, Emmett O'Neill, sustained injuries from which he died.

Though there was no dispute as to the physical facts appearing at the scene, there was conflict in the evidence as to whether or not the truck carried any rear light as required by law and as to what happened immediately prior to the collision. Thus there was conflict in the testimony as to what actually caused the accident. Plaintiff and two of his witnesses said that the truck bore no rear light. He also testified that the truck was stopped suddenly on the hard surface of the road and without any signal

being given. He thus described how fast he was driving, where the two vehicles were when he first saw the truck, and what then happened:

"A. I was going up the road by Mr. Boswell's Store there. When I come around that curve I was running about 40 miles an hour. When I got there in the straight stretch I saw this truck. I was about a hundred feet from it and when I was about forty or fifty feet from it the truck stopped all at once and I hit my brakes and was another car coming. I couldn't go around him.

"Q. What happened? Did you hit the truck?
"A. Yes, sir, went right into the truck.
"Q. Had the truck stopped?
"A. Yes, sir, the truck had done stopped.
"Q. Stopped on the hard surface or off the hard surface?
"A. On the hard surface.
"Q. What happened after you hit the truck?
"A. I don't know what happened then.
"Q. It knocked you out?
"A. Yes, sir."

When questioned about his application of the brakes when he saw the truck, he testified as follows:

"Q. Now, when you were driving out there on 29 and you saw this truck, you say, stopped, did you put on your brakes?
"A. Yes, sir.
"Q. Did you put them on hard?
"A. Yes, sir, put them all I could.
"Q. Put them on as hard as you could?
"A. Yes, sir.
"Q. Drag your wheels?
"A. Yes, sir."

Defendant's driver and his other employee testified that the truck was properly equipped with rear light which was burning and they said that the truck had not been brought to a stop when struck from the rear.

These conflicts in the evidence have, however, been settled in plaintiff's favor. He now enjoys the favored position of having obtained the verdict of a jury which has been approved by the trial court. We may not disturb the judgment unless it is plainly wrong or without evidence to support it. *Marks* v. *Ore,* 187 Va. 146, 45 S. E. (2d) 894; *Temple* v. *Ellington,* 177 Va. 134,

12 S. E. (2d) 826; *Orndorff* v. *Howell*, 181 Va. 383, 25 S. E. (2d) 327; *Virginia Stage Lines, Inc.* v. *Duff*, 185 Va. 592, 39 S. E. (2d) 634.

It may be that plaintiff was driving faster than he says or that he should have seen the truck before he was quite so close upon it. Yet we cannot say as a matter of fact from the physical evidence surrounding the accident that he was exceeding the speed allowed by law, which was 50 miles per hour, and thus we cannot say that as a matter of law, he was guilty of negligence in that respect. He explains that he was unable to turn and pass to the left of the truck because of the proximity of a southbound car. He likewise states that some 100 feet or thereabouts south of the point of impact, there was a slight curve in the road, and this may have prevented his headlights from sooner revealing the truck ahead of him. The reasonable inferences that may be deducted from this testimony we must take as having been made in his favor by the jury. We are not now authorized to draw different inferences and thus convict him of contributory negligence.

The observation of Mr. Justice Browning in *Virginia Electric & Power Co.* v. *Steinman*, 177 Va. 468, 473, 14 S. E. (2d) 313, is appropriate to this evidence.

"It is well settled, and this court has said so time and again, that the question of negligence, indeed all kinds of negligence—primary, contributory, continuous and concurring—is one for the jury to determine. They are questions of fact, and the jury is the trier of such questions. It is only when the issue is one about which reasonable persons cannot differ—the question so plain in the meaning and interpretation that should be given to it—that no doubt is admitted of its legal significance and effect, that it becomes a question of law for the courts to determine."

■ Are the verdict and judgment void because plaintiff did not sue by next friend?

Upon the facts of this case, section 8-487, Code of 1950, is determinative of the question. Its pertinent part follows:

"No judgment or decree shall be arrested or reversed:

"(1) For the appearance of either party, being under the age of twenty-one years, by attorney, if the verdict, where there is one, or the judgment or decree, be for him and not to his prejudice. * * *"

During the trial and when the plaintiff was testifying, he was asked the following question on direct examination and answered as indicated.

"Q. How old are you?

"A. Twenty."

On cross-examination he was thus interrogated by defendant's counsel and answered as follows:

"Q. And you are twenty years old now?

"A. Yes, sir."

Why no one at that stage of the trial noticed the significance of the answers is not explained. Yet it appears that no one did, for it was not until September 18, 1951, that counsel for defendant moved to vacate the verdict and judgment because plaintiff had no next friend. It was thus nearly two months after rendition of verdict and entry of judgment that the court's attention was directed to the fact that the infant had sued as if he were of age.

The evidence shows that plaintiff, an eighteen year old negro youth, was seriously injured. His right leg was broken between the knee and hip, and his jawbone fractured. He was confined to a hospital for five weeks and suffered considerable pain, and at a later date it was necessary that he return to the hospital for a few more days. Upon discharge from the hospital he was confined to his bed at his home for about five months, and he was unable to work for some four months more. His medical and hospital bills were between $400 and $500. Yet the evidence bearing upon the issue of negligence and contributory negligence was conflicting, and had a finding on liability been adverse to plaintiff, the evidence would have sustained that conclusion. Thus we have no difficulty in deciding that the verdict was "for him" within the meaning of section 8-487, *supra.*

In *Weaver, et al.* v. *Glenn,* 104 Va. 443, 445, 51 S. E. 835, Judge Whittle, in construing this section, then section 3449, Code of 1904, said: "The omission to appoint a guardian *ad litem* for an infant defendant is reversible error in all cases, unless it appears that the judgment or decree is for the infant and not to his prejudice."

Though this cited case has to do with the failure to appoint a guardian *ad litem,* section 8-487 deals with a situation where an infant is before the court either as the plaintiff or the defendant in interest, and what was said by Judge Whittle

necessarily indicates that whether the infant be plaintiff or defendant, if the judgment or decree is for the infant and not prejudicial to his interest, it should not be disturbed.

Here we find an infant plaintiff who has been represented by competent counsel, and on the issue of liability fairly put to the jury, he has prevailed and recovered a substantial verdict. It fairly compensates him for the injuries suffered. That the verdict was ''for him'' and in his interest and favor, and not to his prejudice, cannot be doubted.

Section 8-487, was enacted to cover such a situation as is here presented and to make valid and binding such a verdict as is now under attack. The infant's rights and interest have been fully protected, and it is to his best interest to sustain the judgment. He has now reached his majority and may give defendant, who has suffered no prejudice or injustice, a full release upon payment of the judgment.

We find no reversible error in the proceeding and the judgment is affirmed.

*Affirmed.*