# Richmond

## CLINTON S. JONES, AN INFANT, ETC. v. ALUMINUM WINDOW AND DOOR CORPORATION, ET AL.

October 12, 1959.

Record No. 4976.

Present, All the Justices.

The opinion states the case.

*George E. Allen, Sr.* and *Charles E. Maurice* (*Allen, Allen, Allen & Allen,* on brief), for the plaintiff in error.

*Alexander H. Sands, Jr.* (*Alexander H. Sands; Sands, Marks & Sands,* on brief), for the defendants in error.

MILLER, J., delivered the opinion of the court.

Clinton S. Jones, twelve years of age, was severely injured when bicycle that he was riding along U. S. route 60 in Chesterfield ty, Virginia, was struck by an automobile operated by Marvin ellers, agent of Aluminum Window and Door Corporation.

le action for damages instituted by the infant through Roger L. , his father and next friend, against Fellers and the corporation r. ed in a verdict of $125,000 against both defendants. In ruling u the several motions made after verdict, the court determined th the award was excessive and required plaintiff to remit $65,000. T effect of this was to put plaintiff upon terms to accept $60,000, a judgment was entered for that sum.

he litigants will be referred to at times as plaintiff and defendants in cordance with their positions in the trial court.

laintiff appealed; the court's action which required him to remit

$65,000 of the verdict, and its entry of final judgment for $60,000 are assigned as error.

Defendants assigned several cross-errors; those relied upon may be summarized and stated as follows:

1) The evidence conclusively proves that plaintiff was guilty of contributory negligence, and the court erred by refusing to vacate the verdict and enter final judgment for defendants;

2) The court erred in giving instruction 5 under the doctrine of last clear chance, and in giving instructions 3 and 4 which concern automobile headlights and the care required of a motorist who is or should be apprised of the presence of a child near the highway.

■ Where the accident happened route 60 extends in an easterly and westerly direction. It is a dual highway divided by an island 39 feet wide. The eastbound and westbound hard-surfaced roadways are 22 feet wide, and each is divided into two traffic lanes.

On February 5, 1957, between 6 and 7 p.m., when plaintiff was riding his bicycle in an easterly direction along route 60 a few miles west of Richmond where there is a slight upgrade in the highway, he was struck by defendant's car which was being driven in the same direction. Visibility at the time was poor, the night misty, drizzling, and very dark, and the child was dressed in dark clothing.

According to plaintiff's testimony, he was riding his bicycle, equipped with burning lights and a reflector, along the right shoulder "about a half a foot or foot" from the hard surface when he was struck by the car. He said that he rode on the shoulder to be out of the way of cars, made no "turn at all" before the impact, but was riding straight and was hit while he "was still on the shoulder."

The boy's father and the State trooper, who came to the scene soon after the mishap, testified that there were bicycle tire marks for 50 feet in a straight line along the shoulder of the road about a foot from the hard surface up to where they ended, and according to the father, the tire tracks never entered upon the hard surface. The trooper said that the four-foot shoulder was muddy and the east end of the bicycle tire tracks made "just a slight curve toward the highway * * *." That evening he could find no marks on the hard surface, but when he went back "a day or two later" he found light scratch marks on the hard surface about a foot from its south edge "in the same approximate vicinity" of where the bicycle tire marks ended. No automobile tire tracks were seen by him on the shoulder in the immediate vicinity of the bicycle tracks.

The front wheel of the bicycle was broken off and found lying on the south shoulder about five or six feet east of the east end of the tire marks. The remainder of the bicycle was lying on the same shoulder about 15 to 20 feet behind defendants' automobile, and the greater portion of that vehicle was also on the south shoulder off the hard surface.

Clinton's shoes had been knocked from his feet and were found, one in the ditch and the other in the field about 10 or 15 feet apart.

When Clinton's father examined the bicycle on Saturday before the accident, it was equipped with the lights required by § 46-268 and § 46-270, Code 1950,[1] and he found the lights and reflector working properly. The day after the accident when he looked at it, the wires of the rear light on the left side of the axle of the rear wheel were disconnected, but the wires to the front light were intact. He reconnected the wires, and the rear light operated.

Defendant, called as an adverse witness, said that he could not "say for sure" how wide the grass plot was between the two sections of route 60, but "I would imagine it is about 12 to 15 feet." He then testified that when the accident happened, he was traveling along route 60 two to three feet from the right edge of the hard surface at a speed of about 45 miles an hour; as the traffic had been rather heavy in the eastbound and westbound lanes, he had his lights on low beam. However, he admitted that at the time of the accident there were no cars approaching immediately from either direction although after the impact the traffic was again fairly heavy. An automobile speed limit of 55 miles an hour is permissive in the area where the collision occurred.

Fellers described the circumstances under which he first saw plaintiff and the location and movement of the bicycle as follows:

"Q. You were traveling in the direction of Richmond and away from Midlothian. In what direction was the bicycle traveling?

"A. Same direction when I saw it—when I saw it it was coming onto the highway.

"Q. How far was it from you when you first saw it?

"A. Very close. I would say approximately 30 feet.

\*       \*       \*       \*       \*       \*       \*

"Q. Did you see him while he was riding along the shoulder?

---

[1] Article 7, chapter 4 of Title 46, as recently amended, is now found in 1958 Replacement Volume 7, Code 1950.

"A. When I first saw him he was on a slight angle coming into the highway standing on his bicycle. He was not sitting on the seat, he was in a standing position.

"Q. Riding going along the highway?

"A. Well, it happened so fast in 30 feet you don't have time to do much. In other words, when I saw him he was on this angle (indicating with hands), and I did everything I could to miss him in the time that I had.

"Q. Was he on the edge of the highway when you first saw him or not?

"A. He was up into the driving lane on an angle coming onto the highway when I first saw him.

"Q. Had he gotten both wheels on the highway, or one?

"A. Well, just like I said before, in 30 feet both wheels was on the highway when I hit hi.., of course, because when I first saw him he was coming onto the highway on an angle.

"Q. Just coming on the highway?

"A. That is right.

      *     *     *     *     *     *     *

"Q. You didn't see him until you were within what distance of him?

"A. About 30 feet.

"Q. You recall answering interrogatories and saying that the distance that you saw him was from 20 to 30 feet?

"A. Well, I used a maximum figure there, from 20 to 30 feet. It is hard to determine exactly to the exact foot.

"Q. At any rate, you were so close that it was difficult for you to tell?

"A. That is right.

      *     *     *     *     *     *     *

"Q. And what part of the bicycle did it strike?

"A. The rear wheel.

"Q. You were traveling how fast, did you say?

"A. Approximately 45.

"Q. You didn't see the boy in time to even apply your brakes, did you?

"A. That is right.

      *     *     *     *     *     *     *

"Q. Along there that night as the road was at that time and with the brakes you had, and in good order, and the condition of the road, within what distance do you think you could have stopped if you had seen some object ahead of you in time to have applied your brakes?

"A. Well, I had new tires on the car. It should have been able to stop, which I did after I struck him, in about 25 to 30 feet.

"Q. Do you think if you could have seen him in time you could have stopped within 20 to 30 feet?

"A. 20 to 50 feet.

"Q. If you could have seen him in time could you have turned to the left?

"A. Oh, yes, I am sure I could have if I had seen him in time.

"Q. Did you turn to the left?

"A. Like I said, I didn't see him in time to actually do anything.

"Q. And if you had seen him in time you could have blown your horn?

"A. That is true.

"Q. To warn him you were coming, but you didn't see him in time to blow your horn?

"A. That is right.

\* \* \* \* \* \* \*

"Q. If you had seen this boy on the bicycle riding along on the the shoulder of the road, or on the edge of the hard surface, say within 75 or 100 feet, could you have avoided him?

"A. Sure I could have. All I had to do was cut about three inches or four inches to my left and I would have missed him."

Defendant further said that because of the atmospheric conditions "the visibility was cut approximately fifty per cent \* \* \*"; he did not see any light on the bicycle, and his car never left the hard surface until after it struck the bicycle. Upon examination of his car the next morning, he observed a "little round dent" in the front bumper about 7 inches from its right end, which appeared to have been made by a "bolt or something." He said "that was the only part of the car that was touched." He also testified that when he got out of his automobile he heard the boy crying and found him getting up out of the ditch on the south edge of the shoulder.

On the morning before the trial Fellers drove the same automobile to the scene to determine how far the extreme right end of the car

bumper would extend over the shoulder when the right wheels of the car were on the edge of the hard surface. He testified that upon placing the car in this position, the bumper extended five inches over the shoulder.

Pictures of the bicycle disclose that the rear wheel, its wire spokes and the mud guard on that wheel were sharply bent inwardly and on an acute angle to the left from the hub and axle, which tended to show that the car struck the bicycle somewhat from its right side.

In determining the issue of whether this twelve year old plaintiff, who is presumed to be free from negligence, was, in fact, guilty of contributory negligence as a matter of law, all conflicts in the evidence and all reasonable inferences deducible therefrom must be resolved in his favor. Upon application of this settled principle of law, it is quite clear that the evidence fails to prove conclusively that he was guilty of contributory negligence. If his testimony is believed, he was free from all negligence. If that of Fellers is believed, it still presents an issue for the jury, for there is no statutory provision which forbids a bicycle rider to travel along the right side of the highway. Section 46-183, Code 1950.

The observation of the late Mr. Justice Browning in *Virginia Electric and Power Co.* v. *Steinman*, 177 Va. 468, 473, 14 S. E. 2d 313, may be appropriately applied to the evidence in this case:

"It is well settled, and this court has said so time and again, that the question of negligence, indeed all kinds of negligence—primary, contributory, continuous and concurring—is one for the jury to determine. They are questions of fact, and the jury is the trier of such questions. It is only when the issue is one about which reasonable persons cannot differ—the question so plain in the meaning and interpretation that should be given to it—that no doubt is admitted of its legal significance and effect, that it becomes a question of law for the court to determine."

This statement from the *Steinman* case has been quoted with approval in *Simmons* v. *Craig*, 199 Va. 338, 99 S. E. 2d 641; *Kidd and Taylor* v. *Little*, 194 Va. 692, 74 S. E. 2d 787; *Riddle* v. *Barksdale*, 194 Va. 766, 75 S. E. 2d 507; and *Virginia Electric and Power Co.* v. *Courtney*, 182 Va. 175, 27 S. E. 2d 917.

■ At the instance of plaintiff the court gave the following instruction:

"The Court instructs the jury that even though you may believe from the evidence that the defendant through no prior fault of his

own was confronted by a sudden emergency, nevertheless, if you further believe from a preponderance of the evidence that at the moment when the defendant arrived at the point where he saw the plaintiff, if the plaintiff was at that same moment in a position of peril of which the plaintiff was unaware, and at the same moment the defendant knew, or in the exercise of ordinary care under the circumstances should have known, that a collision was imminent and that the plaintiff had no knowledge of his peril, then a duty arose in the defendant to exercise ordinary care to do such acts as were reasonable under all the circumstances to the end that a collision might be avoided if possible; and if the jury believe from a greater weight of the evidence that the defendant failed in any such duty and that any such failure was the sole proximate cause of the collision, then the jury shall find their verdict in favor of the plaintiff; and this is true irrespective of whether the plaintiff or the defendant or both of them were guilty of any negligence prior to the said moment when the defendant first saw the plaintiff."

No objections were made to the form of this instruction but defendants earnestly contend that the evidence did not warrant an instruction embodying the last clear chance doctrine.

The doctrine of last clear chance presupposes a situation where there is negligence on the part of defendant and contributory negligence on the part of plaintiff, which upon ordinary and purely legalistic principles would result in a finding in favor of defendant. However, for humane considerations and to avoid that harsh and inevitable result, the law permits two types of plaintiffs to recover, notwithstanding their negligence, if, and only if, certain circumstances exist. These circumstances are clearly and concisely stated in *Greear* v. *Noland Company*, 197 Va. 233, 238, 239, 89 S. E. 2d 49, 53, and quoted with approval in the very recent case of *Norfolk & Western Ry. Co.* v. *Hagy*, 201 Va. 183, 110 S. E. 2d 177. They are "[1] Where the injured person has negligently placed himself in a situation of peril from which he is physically unable to remove himself, the defendant is liable if he saw, or should have seen, him in time to avert the accident by using reasonable care. [2] Where the plaintiff has negligently placed himself in a situation of peril from which he is physically able to remove himself, but is unconstious of his peril, the defendant is liable only if he saw the plaintiff and realized, or ought to have realized his peril in time to avert the accident by using reasonable care."

█ It must be remembered that plaintiff testified that he was at all times upon the shoulder of the highway and never angled onto or entered upon the hard surface. If that be true, he was guilty of no negligence, and the doctrine of last clear chance is not applicable.

However, Fellers' testimony fixed the speed of the automobile at 45 miles an hour and was to the effect that when he first saw plaintiff, the boy was coming at a slight angle onto the hard surface about 30 feet away. Other testimony located and described the bicycle tracks, described the angle at which the wheel was bent, the marks on the hard surface and on the automobile bumper, and the location of the vehicles after the mishap. Plaintiff relied upon this evidence to justify submission of the case to the jury under the doctrine of last clear chance.

It is clear that the evidence does not place this boy in the first class of plaintiffs mentioned in the *Greear* case, *i.e.*, a person who "has negligently placed himself in a situation of peril from which he is physically unable to remove himself." If he is entitled under the evidence to rely upon the doctrine of last clear chance, it must be under the second class as stated in *Greear* v. *Noland Company, supra,* and *Norfolk & Western Ry. Co.* v. *Hagy, supra,* that is, a person who has negligently placed himself in a position of peril from which he is physically able to remove himself, but is unaware of his danger and the driver of the automobile saw him and realized, or ought to have realized, his danger in time to avoid the accident by exercising reasonable care.

If it be assumed or determined that plaintiff did turn at a slight angle onto the hard surface and was negligently inattentive in so doing and thus negligently placed himself in a position of danger of which he was unaware, still to entitle plaintiff to recover the evidence must show that after defendant saw plaintiff and realized or should have realized that he was in peril, defendant could have avoided the accident by the exercise of reasonable care.

Here the time factor precludes a recovery by plaintiff as a member of the second class. The doctrine of last clear chance presupposes sufficient time for effective action. It is not applicable when the time is too brief for the defendant to avoid the mishap by the exercise of reasonable care. *Norfolk & Western Ry. Co.* v. *Hagy, supra.* There is no evidence to show that Fellers had time to avoid the collision after he saw the boy and realized or ought to have realized his peril. The uncontradicted testimony is that when Fellers first

saw plaintiff, he was coming upon the hard surface at a slight angle about 30 feet away, and there is no evidence that under the existing conditions, Fellers, who was traveling at 45 miles an hour, had sufficient time to avoid the collision by the exercise of reasonable care. In fact, all the evidence bearing upon that immediate question is to the effect that after plaintiff angled upon the highway, Fellers was unable to avoid the accident in the momentary interval of time in which he could have taken action toward that end.

Instruction 3 complained of by defendants follows:

"The Court instructs the jury that at the time and place of the collision here involved, it was the duty of the defendant, Fellers, to operate his automobile with such light from his headlights, considering the weather, traffic, his speed, and all the other circumstances then prevailing, as would enable him to reasonably discern the presence of a bicyclist on the right shoulder or right edge of the hard surface of the highway in time to take reasonable precautions thereafter to avoid a collision should such precautions later become necessary. And if the jury believe from the greater weight of the evidence that the defendant, Fellers, failed in any such duty and that any such failure was the sole proximate cause of the collision, then the jury shall find their verdict in favor of the plaintiff."

Defendants insist that the lighting equipment required on automobiles when operated upon public highways, and the time and manner of its use, are prescribed and regulated by statute and that instruction 3 stated what the driver's duty was at common law when his duty should have been stated under the applicable statute.

The pertinent part of § 46-275, Code 1950, reads:

"If natural light is insufficient to enable the operator of a vehicle to discern an object at a distance of three hundred feet the lamps in this article respectively required of different classes of vehicles shall be lighted."

Sections 46-276 and 46-277, Code 1950, are intended to prescribe the capacity respectively of single-beam and multiple-beam headlights and their manner of use. *Barry* v. *Tyler*, 171 Va. 381, 199 S. E. 496.

Section 46-279, Code 1950, which is also pertinent, follows:

"Whenever a vehicle is being operated upon a highway or a portion thereof which is sufficiently lighted to reveal any person or object upon such way at a distance of three hundred and fifty feet ahead, the operator of such vehicle shall use one of the lowermost

distributions of light or shall dim the head lamps if the vehicle has single-beam lamps. Whenever a vehicle approaches an oncoming vehicle within five hundred feet it shall be the duty of the operator of such vehicle to use one of the lowermost distributions of light so aimed that glaring rays are not projected into the eyes of the oncoming driver or to dim the headlamps if the vehicle has single-beam lamps."

Article 7 of chapter 4, Code 1950, entitled "Lighting Equipment", prescribes the lighting equipment required on motor vehicles operated upon a highway and the time and conditions under which and how this equipment shall be used. This legislation was intended to encompass the conditions under which the lighting of different classes of motor vehicles is required, and the capacity and character of the lighting equipment to be used under the varying conditions.

The instruction given upon the capacity and character of lights that it was incumbent upon defendant to use under the conditions prevailing at the time and place of the accident should have been framed in accordance with the requirement of the statutes and the applicable evidence. Defendants' objection to this instruction was well taken.

Instruction 4 told the jury "that a child under the age of fourteen years operating a bicycle along the highway is of itself a warning of danger and when a motorist sees or by the exercise of reasonable diligence under the circumstances should have determined that the bicyclist was a child, it is his duty in approaching such child to assume that the child might not operate the bicycle in a careful and cautious manner * * *."

In objecting to this instruction, counsel for defendants conceded that the instruction "would be proper in daylight and might be proper under normal conditions at night," but insisted it was improper under the evidence "in this case." He said that "while there might have been a duty to see a cyclist under the evidence in this case, it would have been a physical impossibility for any motorist to have determined the age of a rider under the then circumstances. * * *"

As defendants conceded that the motorist might have seen the bicycle and rider by the exercise of reasonable care, it was then a matter to be argued to the jury as to whether or not the motorist would or should have been apprised of the fact that the cyclist was a child. The objection was without merit.

The judgment must be vacated and a new trial awarded for the reasons stated. There is no occasion to review the action of the court which required plaintiff to remit a part of the verdict and put him on terms to accept the lesser sum determined upon by the court.

*Reversed and remanded.*