## Staunton

### J. B. HERSHMAN v. J. N. PAYNE.

September 8, 1954.

Record No. 4253.

Present, All the Justices.

The opinion states the case.

*Langhorne Jones* and *Samuel M. Hairston,* for the plaintiff in error.

*W. Carrington Thompson* and *Joseph Whitehead, Jr.,* for the defendant in error.

MILLER, J., delivered the opinion of the court.

J. N. Payne was injured when a truck driven by J. B. Hershman, in which Payne was riding as a guest, was involved in a collision with an automobile operated by Marvin Edwards. In the trial court Payne obtained a verdict and judgment against both Hershman and Edwards, but as no appeal was sought by Edwards, the judgment against him has become final.

The controlling question presented is whether or not the evidence, when considered in the light most favorable to Payne, is sufficient to establish that Hershman was guilty of gross negligence in the operation of his truck. Section 8-646.1, Code of 1950.

The collision of the two vehicles occurred about 6:30 p. m. on July 30, 1952, at the intersection of state route 40 and state route 665 in Pittsylvania county. Route 40 is a hard-surfaced, primary road eighteen to twenty feet wide. Where the accident happened, it extends in an easterly and westerly direction, and immediately east of the point of mishap, the shoulders of the highway are narrow. They were described as "very narrow, not wide enough for an automobile to pull over on." State route 665, a secondary road of dirt and gravel surface extending in a northwesterly and southeasterly direction, crosses highway 40 diagonally. It is eighteen to twenty feet wide, but spreads or fans out to about thirty feet in width where it crosses route 40. The collision occurred in the "fanned out" mouth of route 665 where it enters the south edge of route 40.

Hershman was operating a two-ton truck in a westerly direction along route 40. He was taking Payne to the latter's home, which required that he drive westwardly along route 40 to its intersection with route 665, and there turn left and proceed in a southeasterly direction along the latter road. Before reaching route 665, Hershman stopped at a store about a mile east of the intersection, and while there his wife drove up in her Chevrolet automobile. When he and Payne left the store and proceeded toward the intersection, Hershman's wife followed them in

her car. As the truck neared the intersection, Hershman was driving at about 40 to 45 miles per hour, and his wife was following at a like speed about 100 to 150 feet behind the truck. When the truck turned to the left into route 665, it was struck on its left side by a Pontiac automobile operated by Marvin Edwards, who was also driving westwardly along route 40. He had just passed the car driven by Hershman's wife and struck the truck as its rear wheels were leaving the hard surface of route 40. The force of the impact sprang open the right door of the truck and threw Payne from his seat to the ground.

State Trooper W. F. Haden, who went to the scene of the accident before the vehicles had been moved, described the conditions obtaining. He said that the bumper and the front part of the Pontiac car had struck and were lodged under the left side of the truck just back of that vehicle's cab; that most of the truck was in route 665, but about four feet of its body extending behind the rear axle protruded into route 40. No skid marks were left by the truck but it had been knocked westwardly about eight inches by the force of the impact. He further said that the Pontiac car had entered the intersection about twelve feet or thereabouts when it struck the truck. Marks that extended eastwardly along route 40 from the point of impact disclosed that Edwards' car had skidded twenty-four steps before striking the truck. The eastern end of the skid marks began in the center of route 40, but as they extended westwardly to and into the intersection, they inclined toward and onto the shoulder on the south edge of the hard surface. The marks made by the left wheels for part of the distance were near to or in the ditch along the south edge of the narrow dirt shoulder.

Edwards admitted that before the collision he was driving from 40 to 50 miles an hour and had just passed the Chevrolet car which he said was about 100 feet behind the truck. He denied that he intended to pass the truck in the intersection, and said that Hershman, without giving any signal,

"cut the corner" into route 665, and he could not avoid the collision. He further said that he sounded his horn before passing the Chevrolet car. The combined testimony given by Edwards and Payne was sufficient to prove that Hershman, preparatory to making the left turn, failed to give the statutory signal required by section 46-234, Code of 1950; that he failed to "pass beyond the center of the intersection * * *" before turning his vehicle to the left as required by section 46-231, Code of 1950; and that in making the turn, he failed to use reasonable care to see that such movement could be made in safety, and so violated section 46-233, Code of 1950. *Smith* v. *Clark*, 187 Va. 181, 46 S. E. (2d) 21.

Hershman and his wife denied that Edwards sounded his horn or that Hershman violated any of the statutory provisions. He also said that before making the turn he looked in his rear view mirror and saw his wife's car, which he already knew was behind him, but that he did not see the oncoming Pontiac. He indicated that Edwards' car must have then been so close behind the Chevrolet car as to be hidden from his view. His testimony and that of his wife tended to show that the accident was caused solely by Edwards' negligence in attempting to pass the truck at an excessive rate of speed while it was in the intersection and as Hershman undertook to make his left turn at a moderate speed. These conflicts in the evidence have, however, been settled by the jury's verdict, and we must consider the evidence in the light most favorable to Payne and accept all just inferences that may be drawn therefrom in his favor.

Upon application of this principle, the evidence proves that Hershman did not give the required signal, "cut the corner" short of the center of the intersection, and failed to use reasonable care to see that his turn could be made in safety. It is argued by Payne that whether or not the cumulative effect of these several statutory violations and acts of negligence measures up to gross negligence is a matter upon which reasonable men could differ, and that

being true, the verdict and judgment should not be disturbed. He relies upon *Drumwright* v. *Walker,* 167 Va. 307, 314, 189 S. E. 310, wherein it is said:

" * * * if a number of acts of omission and commission are so combined that reasonable and fair-minded men may differ as to whether the cumulative effect thereof evinces a form of recklessness or a total disregard of all precautions akin to wilful and wanton misconduct, it is a question for the jury."

That principle is restated in *Kennedy* v. *McElroy*, 195 Va. 1078, 1082, 81 S. E. (2d) 436:

"If a number of negligent acts are so combined that reasonable men may differ as to whether their cumulative effect shows a form of recklessness or a total disregard of all precautions akin to willful and wanton misconduct, it is a question for the jury whether such negligence amounts to gross negligence. *Mitchell* v. *Wilkerson,* 193 Va. 121, 127, 67 S. E. (2d) 912, 916; *Drumwright* v. *Walker,* 167 Va. 307, 314, 189 S. E. 310, 313."

In the final analysis and weighing of the evidence, the question is not what or how many statutory violations can be said to have been established or how many acts of negligence have been proved. One act of simple negligence may violate several statutes. The decisive legal question is: Did Hershman's conduct, his acts of commission and omission, show such utter disregard of prudence as to constitute total indifference and complete disregard of the safety of his guest?

"Gross negligence, as we have often said, is that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another. *Millard* v. *Cohen,* 187 Va. 44, 46 S. E. (2d) 2; and the cases there cited. The element of culpability which characterizes all negligence is in gross negligence magnified to a high degree as compared with that present in ordinary negligence. *Thornhill* v. *Thornhill*, 172 Va. 553, 2 S. E. (2d) 318. It has been described as such heedless and reck-

less disregard of the rights of another as should shock fair-minded men." *Crabtree* v. *Dingus, et al.,* 194 Va. 615, 618, 74 S. E. (2d) 54.

It was Hershman's duty to comply with the statutes when he undertook to turn. Yet until there was something to put him upon notice to the contrary, he had a right to assume that no driver approaching from his rear would follow his truck "more closely than is reasonable and prudent" under the circumstances obtaining (section 46-229, Code of 1950), or violate the provision of section 46-209(4), Code of 1950, which forbade a driver proceeding in the same direction from passing him "at any intersection of highways."

Here there is no suggestion that Hershman had been guilty of negligence of any character until he undertook to negotiate the turn. In making the left turn, he failed to observe statutory requirements and each violation constituted negligence. Yet there was nothing in the manner in which he approached the intersection and made the turn that indicated a reckless neglect of all precaution, amounting to total indifference and complete disregard for the safety of his guest. The cumulative effect of his statutory violations actually amounted to nothing more than a failure to be vigilant and a lack of reasonable care in making the turn, and that falls short of gross negligence.

*Reversed and final judgment.*