# Staunton

HILL HARDWARE CORPORATION v. LAWRENCE A. HESSON.

September 4, 1956.

Record No. 4544.

Present, All the Justices.

The opinion states the case.

*Walter H. Carter* and *Henry M. Sackett, Jr.* (*Williams, Roberston, Sackett & Blackburn*, on brief), for the plaintiff in error.

*William Rosenberger, Jr.* (*Perrow & Rosenberger*, on brief) for the defendant in error.

MILLER, J., delivered the opinion of the court.

John W. Moss was seriously injured when a truck owned by Hill Hardware Corporation (hereinafter called Hill) and driven by its employee, William H. Mosby, collided with an automobile owned and operated by Lawrence A. Hesson in which Moss was riding. In an action for damages instituted by Moss against Hill and Hesson, it was alleged that the collision and resultant injuries were caused by the joint and concurring negligence of the two defendants.

After institution of that action by Moss against the two alleged tort feasors, Hill made a compromise settlement with Moss for $23,500, but before doing so, Hill notified Hesson and asked him to contribute to the settlement. Hesson declined to contribute and after the settlement was concluded, Hill instituted this action under § 8-627, Code of 1950,[1] against Hesson for $11,750, half of the amount paid to Moss in settlement of his claim. Upon trial of Hill's action against Hesson, a verdict was returned in favor of Hesson and from judgment entered thereon, we granted Hill an appeal.

In his assignments of error Hill states that prejudicial error was committed by the court in the granting and refusing of instructions, but Hesson asserts that the evidence is insufficient to support any verdict other than one in his favor. These claims require that the evidence be stated in some detail.

George Hesson and his son, Lawrence Hesson, reside in Riverville, Virginia, but they live in different homes. On Saturday, June 14, 1952, the water pump at George Hesson's residence was out of order, and he was anxious to have it promptly repaired. John W. Moss, an employee of the Chesapeake and Ohio Railway, who lives in Gladstone, Virginia, about five miles from Riverville, is adept at plumbing work and about a week previously he had installed a water pump and bathroom fixtures in Lawrence Hesson's home. When Lawrence Hesson learned that the pump at his father's residence was out of order, he called Moss on the telephone and requested him to come and repair the pump. When first asked, Moss stated that he planned to go to Lynchburg and would not be able to do the work. However, when the request was repeated and Lawrence Hesson offered to drive to Gladstone and get him and carry him back after the repairs had been made, he acceded to the request.

Moss and the Hessons had been friends for years, and no charge was to be made for making the repairs which it was believed would

---

[1] "Contribution among wrongdoers may be enforced when the wrong is a mere act of negligence and involves no moral turpitude."

not take much time. Moss said that he was going to do the job as a friendly and neighborly act.

Lawrence Hesson, accompanied by his brother-in-law, J. B. Boyle, drove to Gladstone to get Moss. The necessary tools were brought by Moss, and he, Hesson, and Boyle occupied the front seat of the car on the trip back to Riverville. They proceeded southwardly along route 622, a hard-surfaced sixteen-foot wide secondary state highway which extends in a northerly and southerly direction. State route 601, a gravel-surfaced secondary state road extends in an easterly and westerly direction, and between Gladstone and Riverville it intersects route 622 from the west, but it does not extend across highway 622. Where route 601 intersects route 622, it enters at an ascending grade and fans out in the shape of a "Y"; it was at this intersection that the collision occurred about three o'clock in the afternoon.

Mosby, who was driving the Hill truck eastwardly along route 601, intended to turn left and proceed northwardly on route 622, but just as the truck entered the intersection it collided with the car. After the collision Hesson's car slid sideways down the road, rolled over and came to rest on its wheels on the left edge of route 622 about 129 feet south of the point of collision.

A bank at the northwest corner of the intersection upon which some vegetation and bushes were growing materially limited the view of drivers approaching the intersection from the west on route 601 or from the north on route 622.

Boyle testified that Hesson was driving at 35 to 40 miles an hour and that the truck, which he first saw when it was about six or seven feet from the intersection, entered route 622 and struck the right rear fender of the car a "pretty fast lick and hard." When asked if Hesson ever slowed up or made any effort to stop or turn his car aside, he answered, "He didn't have time."

Lawrence Hesson testified that he was not driving over 35 or 40 miles an hour, and that he was about ten feet from the intersection when he saw the truck to his right about ten feet down the hill. He further said that there is a slight down grade on route 622, that the upgrade on route 601 as it enters route 622 is "right steep," and there were some bushes which prevented him from seeing the truck sooner which was being driven on the left side of route 601 and moving "pretty fast" when he saw it, and it struck his rear fender a "terrific blow." He also said that he was familiar with the road, as-

sumed that he had the right of way and did not apply his brake, reduce speed or turn before his car was struck. In explanation he said, "I didn't think he was coming up there and hit me." To further questions he said that the truck was coming up the hill and if Mosby had applied his brakes, he could have easily stopped and avoided the collision.

The depositions of Moss were taken, and he said that he did not see the truck before the collision, but that Hesson was driving at a moderate rate of speed, "I would say * * * around 35 to 40, maybe 45" and there was nothing about Hesson's speed that caused him any alarm.

Mosby testified that as he approached route 622 on an ascending grade, he "pulled down very slow" to ease up into the roadway for his vision to the left was obstructed by the bank and bushes, and as he "nosed into the road" in an effort to see to his left, the Hesson car "shot by me and we met together there." He said that "according to my imagination, he was running as much as fifty miles an hour. * * * It seemed like he was running very fast. He just flashed by me." He also said that he came up the incline about 5 to 10 miles an hour because he knew he had to stop before going into the road, and his wheels had reached the hard surface of route 622 with the bumper out over the road when the front of Hesson's car passed, and its rear fender came in contact with the truck's bumper.

Two other occupants of the Hill truck, neither of whom knew how to drive a motor vehicle, i.e., Mosby's wife, Katherine Mosby, and his helper, William Morgan, both seated on the front seat, did not see the Hesson car until it was right in front of them just as it "hit." They said it was going "real fast * * * running pretty fast." Morgan also said that Mosby couldn't see to his left because of the "high bushes and the bank * * *," and he stopped and then "pulled on out into that road" in low gear and the rear fender of the Hesson car struck the bumper of the Hill truck.

After overruling Hesson's motion to strike the evidence, the Court held that Moss was a guest in Hesson's car and that there could be no recovery by Hill unless it proved that Hesson was guilty of gross negligence that contributed as a proximate cause to the accident. Hesson contended that the evidence was insufficient to sustain a finding of gross negligence and objected to the submission of that issue to the jury. In submitting to the jury the issue of whether or not Hesson was grossly negligent, the court also instructed as to

which driver had the right of way at the intersection and the instructions submitting these issues to the jury were objected to by Hill and appropriate exceptions taken.

[■] We first review the court's holding that Moss was a guest in Hesson's car.

When Lawrence Hesson agreed to drive to Gladstone and get Moss, he was acting for his father who would derive benefit from the work that Moss was to do, yet none of the three intended or expected that any business relationship be created. Each knew and realized that no contractual status existed between Moss and either of the Hessons, for the service to be rendered was considered by all as a gratuity and friendly act.

Section 8-646.1, Code 1950, provides in part:

"No person transported by the owner or operator of any motor vehicle as a guest *without payment for such transportation* * * * shall be entitled to recover damages against such owner or operator for death or injuries * * * unless such death or injury was caused or resulted from the gross negligence * * * of such owner or operator." (Emphasis added.)

In construing and applying this statute in *Dickerson* v. *Miller*, 196 Va. 659, 662, 85 S. E. 2d 275, we said:

"In considering whether a person is a paying passenger or guest passenger, the courts of the several states which have statutes similar to this section of our Code, are in general agreement as to the principles to be applied. See 5 Am. Jur., Automobiles, § 239, p. 634. With respect to 'payment' it is not necessary that the operator of the vehicle receive actual cash in return for the transportation supplied, since services or other benefits given by the occupant, if regarded by the parties as consideration inducing the offer of transportation, may be sufficient to entitle the occupant to the status of a paying passenger, as distinguished from a guest passenger. See, for example, *Hayes* v. *Brower*, 39 Wash. (2d) 372, 235 P. (2d) 482, 25 A. L. R. (2d) 1431; *Wilcox* v. *Keeley*, 336 Mich. 237, 57 N. W. (2d) 514; 10 A. L. R. (2d) 1361."

It is generally held that it is not necessary to prove that there was an express enforceable contract between the operator and the occupant of a motor vehicle resulting from considerations moving from one to the other to raise the status of the occupant from that of a guest to that of a paying passenger. However, mere giving and receiving of friendly and reciprocal benefits and amenities between the

driver and occupant without any thought of creating a business or contractual relation is insufficient to change the status of a guest to that of a paying passenger within the meaning of § 8-646.1. *Brown* v. *Branch*, 175 Va. 382, 9 S. E. 2d 285; *Miller* v. *Ellis*, 188 Va. 207, 49 S. E. 2d 273; *Davis* v. *Williams*, 194 Va. 541, 74 S. E. 2d 58; 10 A. L. R. 2d 1351.

It is clear that no business relationship existed between Moss and Lawrence Hesson, whether or not the latter was acting for himself or his father, and we find nothing in the conduct or undertaking of the parties to show that the trial court erred when it held that Moss was being transported by Hesson as a "guest without payment for such transportation."

■ Was Hesson guilty of gross negligence in the operation of his automobile? If not, there could be no finding in favor of Hill and we need not discuss the assignments of error having to do with the giving and refusing of instructions.

The evidence bearing upon this question, when viewed in the light most favorable to Hill, shows that Hesson was driving along a smooth, hard-surfaced road on a slight down grade at not over 45 miles per hour, and thus well within the limit allowed by law as he approached the intersection. At the intersection there was an embankment to his right on which some bushes were growing that limited his vision in that direction, and he was within about ten feet of the intersection when he saw the truck approaching from the west along route 601 which entered route 622 upon an ascending grade. Hesson failed to turn his vehicle or apply his brakes as the front of the truck entered the intersection and struck the rear fender of his car. He was in close proximity to the approaching truck when he saw it and explains his failure to turn or brake his vehicle by saying that he thought he had the right of way, that the driver of the Hill truck could stop in a few feet for he was proceeding uphill and concluded that he would clear the intersection without mishap. One of the occupants of Hesson's car also said that Hesson did not have time to stop or turn his car and avoid the collision as the truck suddenly entered the edge of route 622.

Hill admits that its driver was guilty of negligence that proximately contributed to the collision but contends that the evidence shows that Hesson failed to keep a proper lookout or control of his car, operated his car at an unreasonable speed and violated the right of way statute,

§ 46-238, Code 1950, which conduct it says permits a finding of gross negligence by the jury.

Hesson insists that he and not Mosby was entitled to the right of way because the truck was leaving a gravel-surfaced road and entering an improved hard-surfaced highway. Section 46-255, Code 1950.

We need not determine which driver was entitled to the right of way at this intersection of two secondary state highways, for if it be conceded that Hesson was not entitled to the right of way, yet we find nothing in the facts and circumstances proved to sustain a finding of gross negligence on his part. He was driving at a lawful rate of speed, and the evidence does not indicate that his vehicle was not under control before the accident. Though he might have kept a more vigilant lookout and approached the intersection at a lesser speed, yet there was nothing in his conduct or in the manner in which he operated his automobile to shock reasonable men or show that he was guilty of an "utter disregard of prudence amounting to complete neglect of the safety" of the occupants of his car, which is necessary to justify a finding of gross negligence. *Hershman* v. *Payne*, 196 Va. 241, 83 S. E. 2d 418; *Sibley* v. *Slayton*, 193 Va. 470, 69 S. E. 2d 466; *Young* v. *Dyer*, 161 Va. 434, 170 S. E. 737.

For the reasons stated, the judgment of the trial court in favor of Hesson is

*Affirmed.*