# Staunton

## Patrick Simmons v. Lennox O. Craig.

September 6, 1957.

Record No. 4654.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, J. J.

Error to a judgment of the Circuit Court of Roanoke county. Hon. Frederick L. Hoback, judge presiding.

The opinion states the case.

*John H. Thornton, Jr. (Leonard G. Muse; Woods, Rogers, Muse & Walker,* on brief), for the plaintiff in error.

*Kossen Gregory (Allen W. Staples; Woodrum & Gregory,* on brief), for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

Lennox O. Craig instituted this action against Patrick Simmons for personal injuries and property damage sustained by Craig when a pick-up truck that he was driving collided with an automobile being driven by Simmons in the opposite direction. Simmons answered by filing his grounds of defense denying negligence and a cross-claim for damages to his person and property by reason of the negligence of Craig. The issue was joined and the jury returned a verdict of $7,000 in favor of Craig. The court dismissed the cross-claim of Simmons against Craig, and entered judgment according to the verdict of the jury. We granted Simmons this writ of error.

The errors assigned present the following questions:

(1) Was Simmons guilty of any actionable negligence?

(2) Was Craig guilty of contributory negligence as a matter of law?

(3) Should the trial court have granted Instruction C requested by Simmons?

The collision occurred on State Route 24, in Roanoke County, on August 2, 1954, about seven-thirty p. m., outside of a business and residential district, while a heavy rainstorm was in progress. Route 24, which is a two-lane macadamized road, twenty-two feet wide, extends in an easterly and westerly direction. The collision of the two motor vehicles took place about a mile east of the Town of Vinton, Virginia, where the road, which is divided by broken white lines, is straight for a distance of twelve hundred to fifteen hundred feet, and is slightly upgrade proceeding eastwardly.

Simmons was driving a 1951 Nash automobile westwardly toward Vinton, and Craig was proceeding eastwardly in his 1950 Dodge pick-up truck following another motor vehicle for a considerable distance. Following Craig was an automobile operated by Irvin Chisom. Craig said he was driving twenty-five or thirty miles an hour until he increased his speed to pass the car in front of him.

Simmons estimated his speed at approximately twenty miles per hour. All of the evidence was to the effect that vision was greatly obscured by the weather conditions prevailing at the time of the accident, and that it was sufficiently dark to require each of the vehicles to have its headlights on.

Craig testified that he had the headlights of his truck turned on; that his truck was loaded with chicken feed; that the car he was following was going too slow for him; and that he was "interested" in getting to his home because his chicken feed was getting wet. Said he, "I just thought I had a good chance to pass then and I tried it." He gave this account of the collision: "* * * (A)s I went out of Vinton it was raining and I followed this car on out waiting and watching for a chance to pass—I would not risk no passing until I got to that long stretch and saw nothing to keep me from passing—the lanes were open—pulled to my left lane to pass and got about even of this car I was trying to pass not knowing there was anybody behind me, and I ran right up into a light and I just could not do nothing looked like but go right into it—just time to say here he comes and there he goes and bang, we hit."

Craig also said that when he looked ahead, as he "had been doing all the way out of Vinton, trying to find a chance to pass," he saw "nothing but dark road." Asked when he first knew that a car was coming towards him, he replied: "Just an instant or so before it hit because I seen nothing until that time." He was uncertain of the exact position of his car, with relation to the car he was following, at the time of the collision, but thought he was "about even with it" and not as far back as its rear end.

Irvin Chisom, who was driving the car behind Craig, and had followed him for about a mile, said he saw the Craig truck pull into the left lane and start to pass the car ahead of him, and when the truck was "half-way up with the car he was attempting to pass, I just saw some lights flash up like that (indicating)—that is all—and they hit." He estimated that the Craig and Simmons cars were about two or three lengths apart when the lights of Simmons' car "suddenly flashed on."

On cross-examination Chisom said with reference to the flashing of the lights "That is the first time I saw any lights, looked like just a split second in between I saw the lights and there was a crash, that was all."

He said that he intended to pass the front car in line as soon as

Craig had passed, and that his left front wheel had entered the west-bound lane about six or twelve inches; but that when he saw the lights of Simmons' car he turned back into his proper lane, applied his brakes, and stopped his car on the right-hand side of the road. He also stated that notwithstanding the weather conditions an unlighted car could be seen for a distance of fifty yards on the road at the most.

Simmons testified that before he reached a drive-in theater, located four hundred and twenty-five steps east of the point of the accident, he turned on his windshield wiper and headlights because of the heavy rain; that he proceeded down the road at a speed of twenty miles per hour; and that when he reached a point about two hundred and twelve steps from the theater, he saw an approaching car with its lights on; that just as he was "meeting" that car, or rather, "just before he got to it," he saw approximately twenty feet ahead of him "one headlight bearing out behind it, another headlight, and a crash and that was the story." Under cross-examination, he estimated that he was only two or three car lengths from the Craig car when the latter came out from behind the car it had been following.

D. E. Fuqua, who lives near Route 24, a short distance east of the drive-in theater, said it had just begun to rain when he entered Route 24, slightly east of the theater, and he then turned on his lights as the rain became heavy. He said that just before he drove into the high-way, Simmons' car came by, and "it didn't have lights on when it passed me." However, after Fuqua entered the highway and pro-ceeded westward thereon, he observed rear lights on the Simmons' car some distance down the slight grade ahead of him. As he ex-pressed it,—"Just about the time I seen that he applied his brakes and a big flare went up from his brake light—stop light," and the collision immediately followed. He further said that the rain was "pouring down," and that he did not remember seeing or passing any car going eastwardly.

E. C. Creasy, Jr., operator of the drive-in-theater, heretofore re-ferred to, called by Simmons to testify to the weather conditions, stated that he didn't believe that he had "ever seen it rain any harder —just looked like a fog of mist just settled over the whole situation there, you could not see anything too far." Asked how far he could see down the road during the rainstorm, he replied: "Well, an un-lighted object I would say your visibility would have been two or three hundred feet."

The collision occurred wholly in the westbound lane, Simmons'

proper lane of travel. According to Simmons, the right side of his car was within six inches of the shoulder of that lane.

It appeared that the car Craig was attempting to overtake and pass continued on its course without stopping, and the identity of its driver was unknown.

As a result of the accident, Craig suffered severe personal injuries and his car was damaged to the extent of more than $600. Simmons' car was demolished, but his injuries were less severe than those of Craig.

The "Rules of the Road" provided by "The Motor Vehicle Code of Virginia," Code of Virginia, 1950, Title 46, §§ 46-220 to 46-242, are designed to protect the users of the highways. They are for the guidance and benefit of those who proceed in the same direction, proceed in the opposite direction, who may be stopping, starting, or crossing the highway, or those who may undertake to pass another vehicle, and those who may be affected by the operation of a motor vehicle.

Section 46-225 provides that:

"The driver of an overtaking motor vehicle when traveling outside of a business or residence district shall give audible warning with his horn or other warning device before passing or attempting to pass a vehicle proceeding in the same direction."

If Craig's failure to sound his horn proximately contributed to the accident, he was guilty of contributory negligence.

The jury had the right to infer that had Craig sounded his horn, it would have warned the driver of the vehicle ahead of him "to give way to the right in favor of the oncoming vehicle," and "not increase the speed of his vehicle until completely passed by the overtaking vehicle," Code, § 46-227. The signal would have warned the driver ahead not only to stay on his side of the road, but if danger appeared in advance to drive to his extreme right. *Cab Association* v. *LaTouche*, 197 Va. 367, 373, 89 S. E. 2d 320. Moreover, it would have given notice to Simmons of the presence of Craig's truck behind the first eastbound vehicle.

Section 46-228 reads as follows:

"The driver of a vehicle shall not drive to the left side of the center line of a highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in safety and such over-

taking vehicle shall give way to an oncoming vehicle."

Section 46-228 expressly and positively denies the driver of a vehicle the privilege to drive to the left side of the center line of a highway in overtaking and passing another vehicle proceeding in the same direction, unless the circumstances specified exist. It makes statutory the normal requirement that ordinary and reasonable care should be exercised in making such movement.

"It is well settled, and this court has said so time and again, that the question of negligence, indeed all kinds of negligence—primary, contributory, continuous and concurring—is one for the jury to determine. They are questions of fact, and the jury is the trier of such questions. It is only when the issue is one about which reasonable persons cannot differ—the question so plain in the meaning and interpretation that should be given to it—that no doubt is admitted of its legal significance and effect, that it becomes a question of law for the courts to determine." *Virginia E. & P. Co.* v. *Steinman*, 177 Va. 468, 473, 14 S. E. 2d 313.

That it was necessary for vehicles to be illuminated by front and rear lights at the time of the accident in accordance with Code, § 46-275, is not open to question. Simmons claimed that he obeyed the statute. The testimony given by Craig and Chisom justifies the finding that Simmons did not turn on the headlights of his car until he was within two or three car lengths from the oncoming Craig truck. It also sustains a finding that Simmons' negligent operation of his vehicle, without headlights until a moment before the impact, was a proximate cause of the mishap. The jury having resolved the conflict in the evidence in favor of Craig, we cannot disturb their findings.

There is no conflict in the evidence as to the actions and conduct of Craig. Both of the vehicles were traveling under difficult weather conditions, and the driver of each vehicle was charged with using reasonable care commensurate with the circumstances. Cf. *Smith* v. *Clark*, 187 Va. 181, 190, 46 S. E. 2d 21.

Craig's own testimony clearly disclosed his negligence. Anxious to get to his home before his cargo got wet, and impatient because of the slow speed of the vehicle ahead of him, he decided to overtake and pass that vehicle. He said he looked ahead and saw nothing but a "dark road," and that "I just thought I had a good chance to pass it and I tried it." Acting upon that impulse, he drove to the left side of the center of the road, and immediately "ran right up into a light,"

and the collision instantly occurred. He admitted that the left side of the highway was not clearly visible, and the evidence shows that it was not free of oncoming traffic for a sufficient distance ahead to permit him to overtake and pass the car ahead of him in safety. He was so indifferent to, and oblivious of, traffic on the highway that he did not even observe the car of Chisom, with its headlights burning, which was immediately behind him before and at the time he turned into the westbound lane.

Craig does not explain why he failed to see Simmons' car, though unlighted, when Chisom said it should have been visible at a distance of one hundred and fifty feet, nor why the headlights of his vehicle and those of the vehicle ahead of him, if of sufficient capacity, did not enable him to discern the approaching vehicle at a distance of three hundred feet. Code, § 46-275. *Barry* v. *Tyler*, 171 Va. 381, 387, 199 S. E. 496. He had no right to assume that the lane for westbound traffic was clear ahead. Without exercising the care and precaution required both by the statute and the ordinary rules of safe driving, he took a "chance" and lost.

In considering the question of Craig's negligence, we have not been unmindful of the weight to be accorded a jury's verdict, approved by the trial court. However, it is our duty to set aside a judgment that is either plainly wrong or without evidence to support it. Code, § 8-491.

In *Wright* v. *Osborne*, 175 Va. 442, 9 S. E. 2d 452, we held that the operator of a motor vehicle was negligent in undertaking to overtake and pass another vehicle or vehicles when his vision was obstructed by the grade of the highway and a curve; and that such negligence should be submitted to the jury as to whether or not it constituted gross negligence.

The violation of either § 46-225 or § 46-228 was sufficient, standing alone, to convict Craig of negligence. *Poole* v. *Kelley*, 162 Va. 279, 173 S. E. 537; *Wright* v. *Osborne, supra.* Cf. *Hershman* v. *Payne*, 196 Va. 241, 83 S. E. 2d 418. Viewing the evidence in the light most favorable to Craig, it appears conclusively that his failure to observe the provisions of § 46-228 was an immediate efficient, contributing cause of the collision. Cf. *Hooker* v. *Hancock*, 188 Va. 345, 49 S. E. 2d 711. It, therefore, follows that he was guilty of contributory negligence as a matter of law.

What we have said and the conclusion we have reached make it

unnecessary to discuss the refusal of the court to grant Instruction C, which deals with the consideration which the jury should give to the failure of Craig to sound his horn before undertaking to pass the vehicle ahead of him.

For the reasons stated, the judgment of the court in dismissing the cross-claim of Simmons against Craig is affirmed; the judgment in favor of Craig against Simmons is reversed; the verdict of the jury therein set aside; and final judgment entered here for Simmons.

*Reversed and final judgment.*

BUCHANAN and MILLER, JJ., dissenting.

MILLER, J., dissenting.

I disagree with the majority of the court upon their evaluation of the evidence in this case and with their application of § 46-228, Code 1950, to the proved facts.

The two issues presented were whether or not Simmons was guilty of actionable negligence and whether or not Craig was guilty of contributory negligence as a matter of law.

The evidence was conflicting in some particulars, and different inferences could be reasonably drawn from the proved facts. The jury resolved both issues in favor of plaintiff, Craig, and the trial court entered judgment on that verdict.

The issue of whether or not Craig was guilty of contributory negligence was fairly put to the jury by the following Instruction A:

"The court instructs the jury that the Code of Virginia forbids a driver to drive to the left side of the center of a highway in passing another car, unless such left side is clearly visible and free of oncoming traffic for a sufficient distance ahead to permit such passing to be made in safety.

"And the court further instructs you that if you believe from the evidence in this case that Craig undertook to pass the car ahead on Route 24 when it was apparent, or should have been apparent to a reasonably prudent man under similar circumstances, that the left side was not clearly visible and free of oncoming traffic for a sufficient distance ahead to permit him to pass in safety, then Craig was guilty of negligence as a matter of law; and if you believe such negligence proximately contributed to his injury, your verdict must be

for the defendant Simmons on the claim of Craig."

Craig is now entitled to have all conflicts in the evidence and all reasonable inferences deducible from the evidence resolved by us in his favor. Unless the judgment is plainly wrong or unsupported by evidence, it should not be disturbed. Section 8-491, Code 1950; *Orndorff* v. *Howell*, 181 Va. 383, 25 S. E. 2d 327; Burks *Pleading and Practice*, 4th ed., § 325, pp. 616, 617, and notes 94 and 96.

In the majority opinion it is conceded that the evidence was sufficient to find that Simmons was driving his car without having its headlights on at a time when the visibility was such as to require that the headlights be burning. The evidence shows that Craig, who was familiar with the highway, did not undertake to pass the car preceding him until he had reached a straight stretch of road where he thought he could make that movement in safety. It also shows that witness Chisom, the driver following Craig, who was familiar with that stretch of road reached the same conclusion. He had also undertaken to pass the unidentified car which was preceding Craig and had pulled his car to the left and was entering the left lane when he saw the headlights on Simmons' oncoming car flash on when it was only a few car lengths away from Craig's vehicle. It thus appears that not only Craig but Chisom, who was driving under exactly the same conditions as was Craig, was undertaking to pass the same car, and he likewise failed to see Simmons' unlighted vehicle.

Under these facts the majority opinion relies upon § 46-228, Code 1950, which reads:

"The driver of a vehicle shall not drive to the left side of the center line of a highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in safety and such overtaking vehicle shall give way to an oncoming vehicle."

The opinion then states that this section "makes statutory the normal requirement that ordinary and reasonable care should be exercised in making such movement." With that construction of the section I agree. But the opinion then holds that it was negligence as a matter of law on Craig's part to undertake to pass the vehicle preceding him without seeing the unlighted car and avoiding it. In other words, § 46-228 is construed so as to impose the burden upon Craig of passing at his peril. This application of the section makes Craig an insurer of his own safety when he undertakes to pass as

against the danger of being struck by an oncoming unlighted car.

When visibility requires the use of headlights, I do not think that § 46-228 was intended to impose upon the passing driver the absolute and unqualified burden to refrain from passing until he is able to see and avoid an oncoming unlighted car.

Simply stated, the facts are that when it was raining and dark, Craig undertook to pass at a reasonable and lawful speed a car preceding him and he was struck head on by another unlighted vehicle. In fact, the evidence shows that Craig had entered the passing lane and was abreast of the car that had been preceding him and only two or three car lengths from Simmons' oncoming vehicle when Simmons turned on the headlights of his until then unlighted car. It being proved that Simmons operated his car without headlights until it was in dangerous proximity to Craig's lighted truck, I think that reasonable men might differ on the question of whether or not Craig should have seen the unlighted vehicle and refrained from undertaking to pass the car ahead of him. It was not negligence as a matter of law for Craig to assume that no car would be operated at that time and under the conditions obtaining without having its headlights burning. The observation of Mr. Justice Browning in *Virginia Electric & Power Co.* v. *Steinman*, 177 Va. 468, 473, 14 S. E. 2d 313, which is quoted in the majority opinion is, I think, pointedly appropriate:

"It is well settled, and this court has said so time and again, that the question of negligence, indeed all kinds of negligence—primary, contributory, continuous and concurring—is one for the jury to determine. They are questions of fact, and the jury is the trier of such questions. It is only when the issue is one about which reasonable persons cannot differ—the question so plain in the meaning and interpretation that should be given to it—that no doubt is admitted of its legal significance and effect, that it becomes a question of law for the courts to determine."

However, after quoting this applicable paragraph, the effect of the majority opinion is to invade the province of the jury and usurp its powers when it holds on the facts and circumstances in evidence that Craig was guilty of negligence as a matter of law when he undertook to pass the car preceding him and was struck by Simmons' unlighted vehicle. It was, I think, within the province of the jury, and not for this court, to determine on all the facts and circumstances whether or not Craig was guilty of contributory negligence.

BUCHANAN, J., joins in this dissent.